**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Craig IVESTER, Defendant–Appellant.**

**No. 01–10260.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 2002.

Filed Jan. 15, 2003.

Samuel P. King, Honolulu, HI, for Defendant–Appellant.

Louis A. Bracco, Assistant United States Attorney, Honolulu, HI, for Plaintiff–Appellee.

Before WALLACE, TASHIMA and TALLMAN, Circuit Judges.

WALLACE, Senior Circuit Judge.

Ivester appeals from his conviction and sentence for conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), and aiding and abetting another's possession of ten pounds of the drug for distribution in violation of 21 U.S.C. § 841(a)(1). He was sentenced to twenty-five years in prison, five years of supervised release, and fined $25,000. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

I.

Ivester raises a number of issues on appeal. In this opinion, we deal only with his argument regarding the district court's handling of a security problem raised by jurors during the trial. We address his other arguments in a companion unpublished disposition.

At the close of the second day of trial, the district judge notified the parties that some jurors had expressed concern for their safety to court staff. The court learned that alternate juror Kenny told jury pool clerk Young that he and a few of the other jurors felt concerned for their safety because of the intimidating appearance of some of the spectators in the courtroom. Young told Kenny to talk with court clerk Fujinaga. Mistakenly assuming that alternate juror Berman had expressed the concern, Fujinaga approached Berman about it while he was with another juror. Berman told her that he had not contacted Young but that he too felt afraid or intimidated "because there were several large people in the audience."

After hearing from Young and Fujinaga, the court discussed the issue with counsel in open court with the jury absent. After

the issue was fully discussed, the court decided to question Kenny in the courtroom but in the absence of the rest of the jurors. The government suggested the questioning be in chambers or the spectators be asked to leave. Over Ivester's objection, the spectators were directed to leave.

With the parties and counsel present, the judge questioned Kenny. Kenny responded that two jurors had expressed concern about the "intimidating" appearance of "some of the larger members of the gallery" and had wondered "why [there was] no[ ] security in the courtroom." Both parties were allowed to question Kenny. Kenny was then excused from the hearing and the court and counsel discussed how the jury should be questioned.

When the jury returned, and with the courtroom still clear of spectators, the judge questioned them as a group:

We have heard that some of you have expressed concerns about what you think is the lack of security throughout these proceedings; so I wanted to give you some information about that that you may not have realized. At no time during this trial, at no time, have there been fewer than two United States marshals in this courtroom. They don't wear uniforms. You may not recognize them. At many times during this trial there have been many more than two United States marshals in this courtroom, who come in and out, sometimes sit in the audience. You will not recognize them. But to the extent you thought there was no security let me assure you there has been security.

Also, when you go out of this courtroom, you see uniformed court security officers. Those—some of them have also been in and out of the courtroom. And, of course, they patrol this whole federal court building. In addition, in this very federal court building is the Marshal's Office. So we have many ununiformed United States marshals in this very building, besides the fact that we always have them in the courtroom. Throughout this federal complex there are also other federal security officers. So to the extent that some of you had concern where's the security, you may not know it's there but let me assure you it is there.

Having heard that, which you may not have known before, is there any juror who still has any concerns at all that you think might affect your ability to be fair in this case, to listen to the evidence, and to reach a verdict that is impartial to both sides? Anyone? If you have a concern, I want to address it.

Are you sure? No one has any concerns?

Okay. . . .

## II.

■ Ivester assigns two errors to the district judge's handling of the jurors' security concern. He first argues that the judge's exclusion of the public spectators from the mid-trial questioning of the jurors violated his right to a public trial, a right guaranteed by the Sixth Amendment and emphasized in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). We review his Sixth Amendment claim de novo. *United States v. Sherlock*, 962 F.2d 1349, 1356 (9th Cir.1992).

■ Before applying the *Waller* test to determine whether the district court violated Ivester's Sixth Amendment right to a public trial, 467 U.S. at 48, 104 S.Ct. 2210, we must first determine whether the right attaches to the court's mid-trial questions of jurors outside the public's presence. Though some courts and treatises boldly declare that the Sixth Amendment right to

a public trial applies to the entire trial, *United States v. Sorrentino*, 175 F.2d 721, 722 (3d Cir.1949); WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING, 5 CRIM. PROC. § 24.1(a) (2d ed.1999) (the Sixth Amendment right to a public trial "covers the entire trial, including the impaneling of the jury and the return of the verdict"), this position has been rejected by recent decisions which demonstrate that the right to a public trial does not extend to every moment of trial. *See, e.g., United States v. Edwards*, 303 F.3d 606, 616 (5th Cir.2002) ("We must first determine whether *Waller* applies to" the court's decision to empanel an anonymous jury); *Peterson v. Williams*, 85 F.3d 39, 42–43 (2d Cir.1996) (unjustified closure is too trivial to violate the Sixth Amendment where closure does not undermine the values furthered by the public trial guarantee); *United States v. Norris*, 780 F.2d 1207, 1210 (5th Cir.1986) ("Non-public exchanges between counsel and the court on such technical legal issues and routine administrative problems do not hinder the objectives which the Court in *Waller* observed were fostered by public trials").

Thus, we must determine whether the proceedings in question implicate the Sixth Amendment. There are three parts of the record at issue: 1) discussions between the court and counsel regarding how to question the jurors, 2) the questioning of Kenny, and 3) the questioning of the jury.

### A.

■ The first need not detain us. The discussion concerning how to handle the questioning was technical and administrative, not impacting the Sixth Amendment right to a public trial.

### B.

■ We next turn to the court's questioning of Kenny. Had the district court decided to question Kenny in chambers without the defendant or spectators, we would conclude that there were no constitutional violations. *United States v. Olano*, 62 F.3d 1180, 1190–91 (9th Cir.1995) (holding a district court's one-on-one meeting with a juror to determine impartiality did not violate the Sixth Amendment right of confrontation and the Fifth Amendment right of due process); *accord Parker v. United States*, 404 F.2d 1193, 1197 (9th Cir.1968) (district court followed the proper procedure in individually interviewing each juror, with only the court reporter present, as to whether the jurors had heard, read, or seen the recently publicized guilty plea); *Polizzi v. United States*, 550 F.2d 1133, 1137 (9th Cir.1976) (same in alternative holding). *See also United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam) ("The mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of *any* constitutional right. The defense has no constitutional right to be present at every interaction between a judge and juror ...."), *quoting Rushen v. Spain*, 464 U.S. 114, 125–26, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (Stevens, J., concurring in judgment) (emphasis added). Because a trial judge may question a juror alone in chambers, without the public present, *a fortiori* the judge may do so with the parties and counsel present.

### C.

Finally, we turn to the issue of the court's questioning of the jury. Under *Peterson*, a trivial closure does not violate the Sixth Amendment. 85 F.3d at 42–43. Many of our sister circuits have relied on *Peterson* to determine whether a closure implicates the accused's Sixth Amendment right to a public trial. *See, e.g., Braun v. Powell*, 227 F.3d 908, 919 (7th Cir.2000) (applying *Peterson* to hold that the exclusion of a single excused juror from the trial did not implicate the right to a public

trial); *United States v. Al-Smadi*, 15 F.3d 153, 154–55 (10th Cir.1994) (applying *Peterson* to hold that the brief and inadvertent closure of the courtroom did not implicate the Sixth Amendment). We conclude we should apply the wise and widely-accepted *Peterson* test in this case.

■ To determine whether a closure was too trivial to implicate the Sixth Amendment guarantee, we must determine whether the closure involved the values that the right to a public trial serves. These values have been articulated in *Peterson* and *Waller* as:

(1) to ensure a fair trial, (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses to come forward; and (4) to discourage perjury.

*Peterson*, 85 F.3d at 43; *see also Waller*, 467 U.S. at 46–47, 104 S.Ct. 2210. We hold that these four values are not implicated by routine jury administrative matters that have no bearing on Ivester's ultimate guilt or innocence.

■ Here, questioning the jurors to determine whether they felt safe is an administrative jury problem. The closure here did not infect any witness's testimony. It did not even infect counsel's opening or closing arguments to the jurors. It did not attack the government. *Compare Waller*, 467 U.S. at 47, 104 S.Ct. 2210 (holding that the right to a public trial attaches to suppression hearings because such hearings resemble a bench trial and frequently attack the conduct of police and prosecutor). Additionally, the questioning of the jury was very brief in duration. This further supports our conclusion that the closure does not implicate Ivester's right to a public trial. *See Peterson*, 85 F.3d at 43 (closure of twenty minutes was too trivial). Thus, we hold the district court's exclusion of the spectators during the brief mid-trial questioning of the ju-

rors to determine if they were concerned for their safety was so trivial as to not implicate Ivester's Sixth Amendment rights.

### III.

■ Second, Ivester argues that the district court abused its discretion when it did not allow his counsel to question the jurors that had been identified as having concerns. We review a district court's decision whether and how to hold a hearing on allegations of jury bias for an abuse of discretion. *Olano*, 62 F.3d at 1192.

■ Usually, an allegation of juror bias is met with a hearing, giving the defendant an opportunity to prove actual bias. *United States v. Madrid*, 842 F.2d 1090, 1094 (9th Cir.1988). However, such a hearing is required only if there is a finding of a reasonable possibility of prejudice. *Id.* Here, the district judge, after questioning Kenny, determined that the problem was principally a perceived lack of security in the courtroom. After the district judge explained that plainclothes marshals were always in the courtroom, she asked the jurors if any of them remained concerned about their safety. They responded in the negative. The district court's preliminary inquiry, then, revealed that there was no reasonable possibility of prejudice, *see Olano*, 62 F.3d at 1192, and further inquiry was not required. The district court did not abuse its discretion when it refused to allow defense counsel to question the jurors individually.

AFFIRMED