Filed 9/10/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| In re<br><br>        JEROME CARRILLO<br><br>                on Habeas Corpus. | B247837<br><br>(Los Angeles County<br>Super. Ct. No. BA389735) |

ORIGINAL PROCEEDING; petition for writ of habeas corpus, William N. Sterling, Judge.  Petition granted.

Angela Berry; Law Office of Alex R. Kessel, Alex R. Kessel and Ivy Kessel for Petitioner.

Jackie Lacey, District Attorney, Roberta Schwartz and Patrick D. Moran, Deputy District Attorneys, for Real Party in Interest.

No appearance by Respondent.

_____

Defendant was charged with assault with a deadly weapon with further allegations that he personally used a firearm and acted to benefit a street gang in the commission of the offense. The trial court released defendant on $90,000 bail. Shortly before a pretrial conference, at an in camera ex parte hearing at which defendant was not present, the trial court raised defendant's bail to $1 million. In this habeas proceeding, defendant challenges his detention on this increased bond as in violation of Penal Code[1] sections 1270.1 and 1289 and his Sixth Amendment and due process rights, and seeks vacation of the court's order increasing his bail and reinstatement of the previously ordered bail. We conclude that the trial court erred in failing to address the reliability of the confidential information; further, the trial court failed to provide defendant with the gist of the prosecution's requested increase in bail, and failed to consider some manner in which defendant could participate in the hearing while at the same time preserving the government's need to proceed in camera. We therefore grant defendant's petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 22, 2012, a felony complaint was filed against defendant, a member of a gang, and several other codefendants charging them with assault with a deadly weapon. (§ 245, subd. (a)(2).) The complaint also alleged defendant personally used a firearm and committed the offense to further the interests of a street gang. (§§ 186.22, subd.(b), 12022.5, subd. (a).) Defendant was released on $90,000 bail, and appeared at a pretrial hearing represented by counsel on March 7, 2012. On that date, a further pretrial conference was set for March 21, 2013.

On March 14, 2013, the prosecution moved ex parte for an in camera hearing to increase the amount of bail, and submitted a declaration under seal in support. The court conducted an ex parte, in camera hearing in which it received confidential information. Our review of the transcript of the hearing indicates the trial court made no effort to ascertain the reliability of the information. After the hearing, the court ordered defendant's bail

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

forfeited, reset bail at $1 million, and issued a bench warrant for defendant's arrest. On that same day, defendant was arrested and remains incarcerated. On March 20, 2013, defendant requested an open hearing on his bail increase, but the court denied the request.

## DISCUSSION

On April 8, 2012, defendant filed a petition for writ of habeas corpus asserting that his detention on an increased bond violated sections 1270.1 and 1289 as well as his Sixth and Fourteenth Amendment rights, and seeks to have his bail reinstated at $90,000. He argues due process and the Sixth Amendment require an open hearing, and refutes that the language of section 1289 permits ex parte in camera bail hearings. Lastly, deducing that confidential information was used at the hearing, he contends he is entitled to discover the material relied on by the prosecution in raising his bail. The People counter that no notice to defendant was required by the literal language of sections 1270.1 and 1289.

## I.

Well-settled principles govern the court's ability to set, increase, or reduce bail. "Except under limited circumstances, the California Constitution guarantees a pretrial right to release on nonexcessive bail. (Cal. Const. art I, § 12.). . . . The court in setting, reducing, or denying bail must primarily consider the public safety. [Citation.] Additionally, the court considers the seriousness of the offense charged, the defendant's criminal record and the probability the defendant will appear for hearings or trial. [Citation.] As to the seriousness of the offense charged, the court, inter alia, considers the alleged injury to the victim, alleged threats to victims or witnesses, the alleged use of a firearm and the alleged use or possession of controlled substances. (*Ibid.*)" (*In re Weiner* (1995) 32 Cal.App.4th 441, 444.) The trial court's statement of reasons shall "contain more than mere findings of ultimate fact or a recitation of the relevant criteria for release on bail; the statement should clearly articulate the basis for the court's utilization of such criteria." (*In re Pipinos* (1982) 33 Cal.3d 189, 193.)

Section 1270.1 requires notice and a hearing for the setting of bail. Section 1270.1, subdivision (a), provides that for serious and violent felonies, a person may be released on a

3

scheduled bail amount after a hearing before an magistrate or judge in an "open court." (§ 1270.1, subd. (a).) Under section 1289, bail may reduced or increased; but it may be increased only by a showing of good cause. (§ 1289; *In re Annis* (2005) 127 Cal.App.4th 1190, 1195–1196.) Section 1289 makes no provision for a hearing; but if defendant applies for a reduction in bail, the statute expressly provides notice must be given to the prosecution, yet no such corollary provision for notice to the defendant exists for an increase in bail.[2] We review the court's decision to increase or reduce bail for an abuse of discretion. (*In re Christie* (2001) 92 Cal.App.4th 1105, 1107.)

## II.

The purpose of the Sixth Amendment is to guarantee a fair trial. (*Faretta v. California* (1975) 422 U.S. 806, 818 [95 S.Ct. 2525, 45 L.Ed.2d 562].) To that end, the Sixth Amendment provides that "the accused shall enjoy the right to a speedy and public trial." (U.S. Const., 6th Amend.) The right to a public trial "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." (*In re Oliver* (1948) 333 U.S. 257, 270 [68 S.Ct. 499, 92 L.Ed.2d 682].)

"Although the Sixth Amendment refers to a 'public trial,' the right encompasses more than the trial itself," and "is not limited to issues that arise after a jury is sworn or times when the jury is present." (*United States v. Waters* (9th Cir. 2010) 627 F.3d 345, 360.) The public-trial right attaches to those hearings whose subject matter "involve[s] the values that the right to a public trial serves." (*United States v. Ivester* (9th Cir. 2003) 316 F.3d 955, 960.) Namely, the right ensures a fair trial, reminds the prosecutor and judge of

---

[2] Section 1289 provides, "After a defendant has been admitted to bail upon an indictment or information, the Court in which the charge is pending may, upon good cause shown, either increase or reduce the amount of bail. If the amount be increased, the Court may order the defendant to be committed to actual custody, unless he give bail in such increased amount. If application be made by the defendant for a reduction of the amount, notice of the application must be served upon the District Attorney."

their responsibility to the accused and the importance of their functions, encourages witnesses to come forward, and discourages perjury. (*United States v. Waters*, *supra*, 627 F.3d at p. 360.) Thus, it "'extends at least to those pretrial hearings that are an integral part of the trial, such as jury selection and motions to suppress evidence.' [Citation.]" (*Ibid.*) The public trial right has been applied to suppression hearings of wrongfully seized evidence (*Waller v. Georgia* (1984) 467 U.S. 39, 46–47 [104 S.Ct. 2210, 81 L.Ed.2d 31] (*Waller*), jury selection (*Presley v. Georgia* (2010) 558 U.S. 209 [130 S.Ct. 721, 175 L.Ed.2d 675]), and in limine motions (*Rovinsky v. McKaskle* (5th Cir. 1984) 722 F.2d 197, 201). Bail hearings "fit comfortably within the sphere of adversarial proceedings closely related to trial." (*United States v. Abuhamra* (2d Cir. 2004) 389 F.3d 309, 323 (*Abuhamra*).) Indeed, "bail hearings, like probable cause and suppression hearings, are frequently hotly contested and require a court's careful consideration of a host of facts about the defendant and the crimes charged. . . . Bail hearings do not determine simply whether certain evidence may be used against a defendant at trial or whether certain persons will serve as trial jurors; bail hearings determine whether a defendant will be allowed to retain, or forced to surrender, his liberty during the pendency of his criminal case." (*Id.* at pp. 323–324.)

In *Waller*, *supra*, 467 U.S. 39, the high court discussed procedural safeguards that must be observed before the courtroom could be closed over the objections of the defendant in the context of a suppression hearing. *Waller* noted that the right to a public trial is not absolute and must sometimes give way to other interests essential to the fair administration of justice. (*Id.* at p. 45.) "'The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" (*Ibid.*) Thus, to justify complete closure of a trial or portion thereof, four criteria must be met: (1) there must be "an overriding interest that is likely to be prejudiced"; (2) the closure must be narrowly tailored, i.e., "no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) the trial court "must make findings adequate

5

to support the closure" and allow a reviewing court to determine whether the closure was proper.  (*Id*. at p. 48.)

Due process similarly requires transparency.  "'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"  (*Fuentes v. Shevin* (1972) 407 U.S. 67, 80 [92 S.Ct. 1983, 32 L.Ed.2d 556].)  "Although . . . due process tolerates variances in the form of a hearing 'appropriate to the nature of the case,' [citation], and 'depending upon the importance of the interests involved and the nature of the subsequent proceedings [if any],' [citation], [this] Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect."  (*Id.* at p. 80.)  "Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other."  (*Abuhamra*, *supra*, 389 F.3d at p. 322.)

Whether a defendant can show no prejudice as a result of the denial of a public trial is inconsequential.  While prejudice may once have been a subject of controversy, the requirement has now been rejected uniformly by federal courts.  (*Rovinsky v. McKaskle*, *supra*, 722 F.2d at p. 201.)  "[I]t would be difficult, if not impossible, . . . for a defendant to point to any definite, personal injury.  To require him to do so would impair or destroy the [public trial] safeguard."  (*United States v. Kobli* (3d Cir. 1949) 172 F.2d 919, 921.)

## III.

Where the prosecution requests a bail increase based on factors that the prosecution determines must be kept confidential, the open trial right applicable to bail hearings collides with the need to protect sensitive information.  "[T]the right to an open trial may give way in certain cases to other rights or interests, such as . . . the government's interest in inhibiting disclosure of sensitive information.  Such circumstances will be rare, however, and the balance of interests must be struck with special care."  (*Waller*, *supra*, 467 U.S. at p. 45.)

6

In *Abuhamra*, *supra*, 389 F.3d 309, the court followed the factors set forth in *Waller*, *supra*, 467 U.S. 39 to determine whether the court could hold a closed bail hearing. In *Abuhamra*, the defendant was convicted of money laundering and dealing in contraband cigarettes, and sought to be released on bail pending sentencing. (*Id.* at p. 314.) Before trial, defendant was free on a $20,000 bond for four and a half years. While on bail, defendant was granted two extraordinary requests for travel to Mecca for a pilgrimage in 2000, and to travel to Yemen in 2003 for three months to visit his dying father. (*Id.* at pp. 314–315.) After the verdict, the prosecution moved to remand defendant pursuant to the Bail Reform Act,[3] (18 U.S.C. § 3143(a)(1)).[4] The prosecution relied on the presumption of danger and flight created by section 3143, and defendant's recent contact in Yemen with a fugitive codefendant—contact established by photographs in defendant's possession upon defendant's return to the United States after visiting Yemen. (*Abuhamra*,

---

[3] The Bail Reform Act of 1984 (18 U.S.C. § 3141 et seq.) (Bail Reform Act) mandates the release of a person pending trial unless no condition or combination of conditions will "reasonably assure" the appearance of the person as required and the safety of the community. (18 U.S.C. § 3142(c)(1).) Under section 3142(f), the magistrate shall hold a hearing to determine whether release on bail should be granted to a defendant pursuant to section 3142(c). Section 3142(g) provides factors for the court shall to consider in granting or denying bail, and a defendant may be retained without bail if there is a finding that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. (18 U.S.C. § 3142(e).) The Bail Reform Act requires that a detention hearing be held, at which time the defendant may request counsel to appear on his behalf, may testify and present witnesses, may cross-examine the witnesses appearing at the hearing, and offer evidence by proffer or otherwise. (18 U.S.C. § 3142(f).)

[4] That section provides, "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline . . . does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with Title 18 United States Code section 3142(b) or (c)."

at p. 315.) Defendant disputed the identity of the person in the photograph. (*Id.* at pp. 315–316.)

Rather than resolve the identity dispute, the court asked whether the prosecution had any other reasons for opposing defendant's release; the prosecution suggested that it submit—in camera and ex parte by affidavit—evidence of defendant's dangerousness. (*Abuhamra*, *supra*, 389 F.3d at p. 316.) The prosecution refused to give defendant "the gist" of the intended proffer, stating to do so would compromise the identity of witnesses or national security. (*Ibid.*) After conducting an ex parte in camera hearing, the court issued a six-page sealed final order and a public order stating, "'For the reasons stated in the [sealed] Decision and Order, the Court finds by clear and convincing evidence that the defendant will pose a danger to [the] community and a risk of flight, if he is released.'" (*Id.* at pp. 316–317.)

At the outset, *Abuhamra*, *supra*, 389 F.3d 309 observed that defendant had no constitutional right to bail pending sentencing, instead defining the issue as whether due process permitted a bail application to be denied based on ex parte submissions. (*Id.* at p. 317.) *Abuhamra* found "due process is a flexible standard that can vary in different circumstances" depending on the interest affected compared to the government's asserted interest, and the burdens the government would face in providing greater process. "A court must carefully balance these competing concerns, analyzing '"the risk of an erroneous deprivation" of the private interest if the process were reduced and the "probable value, if any, of additional or substitute safeguards."'" (*Id.* at p. 318, quoting *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893, 47 L.Ed.2d 18].)

*Abuhamra*, *supra*, 389 F.3d 309 noted that "in borrowing the *Waller*, *supra*, 467 U.S. 39 factors, we recognize that they are intended to identify circumstances where the *public* may be excluded from a criminal proceeding. *Waller* did not contemplate that the *defendant* would also be denied access to the closed proceedings. Because *ex parte* submissions in opposition to bail have just this result, we conclude that the *Waller* factors, by themselves, are inadequate to safeguard a defendant's basic due process rights to notice

8

and a fair hearing. Thus, we conclude that a second prerequisite to the receipt of *ex parte* evidence in opposition to bail is disclosure to the defendant of the gist or substance of the reasons advanced in the government's sealed submission so that the defendant may fairly meet this challenge." (*Abuhamra*, at p. 330.) Thus, *Abuhamra* did not foreclose the possibility that, on rare occasions, extraordinary circumstances might warrant receipt of ex parte evidence in opposition to bail release, and "that the circumstances necessary to fit within this narrow exception [are] (a) satisfaction of the factors outlined by the Supreme Court in *Waller* . . . to exclude the public from certain criminal proceedings, (b) disclosure to the defendant of the gist or substance of the government's *ex parte* submission, and (c) careful scrutiny by the . . . court of the reliability of the *ex parte* evidence." (*Abuhamra*, at p. 329.) *Abuhamra* remanded the case before it for the district court to apply the factors it had enunciated. (*Id.* at p. 332.)

In contrast, the minority view is more indulgent of the government's ability to proceed in camera and is set forth in *United States v. Terrones* (S.D. Cal. 1989) 712 F.Supp. 786 (*Terrones*), where the district court conducted a subsequent bail increase hearing and considered ex parte in camera evidence. The defendant and two codefendants in *Terrones* were charged with unlawfully importing 737 pounds of cocaine; if convicted, the offense carried a mandatory minimum sentence of 10 years, a maximum term of life imprisonment, and a $4 million fine. (21 U.S.C. § 841(b)(1)(A)(ii)(II).) Defendant was released on bond secured by real property pledged by the defendant's family. (*Terrones*, at p. 788.) Just two days after the defendant's bail hearing, the prosecution moved for reconsideration of the bail order and presented an in camera affidavit. The next day, the magistrate interviewed the persons referenced in the sealed affidavit. Neither defendant nor his counsel was present at the in camera interview, but defense counsel was invited to submit written questions for the magistrate to ask the witnesses. After the in camera hearing, the magistrate denied bail and ordered defendant detained until trial, finding he was a flight risk. (*Ibid.*)

9

The court concluded its reliance on evidence not made available to defendant was permitted by the Bail Reform Act and passed constitutional muster. First, the Bail Reform Act did not expressly preclude in camera hearings. (*Terrones*, *supra*, 712 F.Supp. at p. 791.) Second, although due process was flexible and not every potential loss of liberty required the full panoply of adversarial protections available at a criminal trial, i.e., representation by counsel, confrontation, and cross-examination, *Terrones* found deprivation of liberty must be accompanied by procedural safeguards. *Terrones* also observed that courts have frequently considered in camera evidence in criminal proceedings, such as when a court took information from a confidential informant yet protected the identity of such informant or when a court "determine[d] whether to issue search warrants, arrest warrants, and wire-tap authorizations." (*Id.* at p. 793.)

Thus, applying the balancing test of *Mathews v. Eldridge*, *supra*, 424 U.S. 319, *Terrones*, *supra*, 712 F.Supp. 786 concluded no due process violation occurred because the liberty interest of the individual was outweighed by "the interests of society articulated . . . in the Bail Reform Act." Further, the court's consideration of the in camera evidence "assist[ed] in guarding against erroneous detention determinations. . . . [B]y employing procedural safeguards when analyzing such material, detainees will be protected against the violation of due process." (*Terrones*, at p 793.) The procedural safeguards used in *Terrones* included requesting questions from the defendant to be submitted to the in camera hearing. (*Id.* at p. 794.)

Conceding that ex parte evidence should be used only in "rare and unusual cases," the court found the case before it such a rare and unusual case: "First, the *in camera* information is extraordinarily relevant and material on the issues of flight and dangerousness. Second, the court cannot envision any other source of the information but for the confidential affiant(s). Third, the court finds that the affiant(s) suffer(s) from a real threat of serious bodily harm or death if identified. Fourth, the identification of the affiant(s) cannot be disclosed because this threat will not abate even if the defendant is detained. Further, because of the danger to the affiant(s), if identified, the *in camera*

10

evidence in this case cannot be disclosed to the defendant except in the most conclusory of terms." (*Terrones*, *supra*, 712 F.Supp. at p. 794.)

## IV.

"'Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.'" (*Abuhamra*, *supra*, 389 F.3d at p. 322, quoting *Joint Anti-Fascist Refugee Comm. v. McGrath* (1951) 341 U.S. 123, 171 [71 S.Ct. 624, 95 L.Ed. 817] (Frankfurter, J., concurring).) A defendant seeking bail release has "the right to know what information is being submitted to the decisionmaker and the opportunity to challenge the reliability of the government's sources as well as provide contrary information." (*United States v. Accetturo* (3d. Cir. 1986) 783 F.2d 382, 390–391.) Given the Sixth Amendment principle of an open hearing and due process foundation of notice and a hearing that are at stake here, we cannot read Penal Code section 1289 as permitting closed bail hearings without adherence to the procedural steps outlined in *Abuhamra*. First, the defendant's interests here were significantly affected by the revocation of bail and imposition of a significantly higher bond without giving him the chance to refute the People's information in open court. Second, there is a risk of error where the decision to revoke bail is based entirely on confidential information. Third, a defendant who has already established his suitability for release on bail has a dignity interest in receiving notice of the decision to revoke bail and in attending the hearing held thereon.

## A.

Therefore, we adopt the additional safeguards of *Abuhamra*, *supra*, 389 F.3d 309 and apply them here.[5] Thus, a consideration of whether defendant's March 14, 2013 bail hearing comported with due process and the Sixth Amendment requires "(a) satisfaction of the factors outlined by the Supreme Court in *Waller* . . . [, *supra*, 467 U.S. 39] to exclude

---

[5] Contrary to defendant's assertion, *In re Alberto* (2002) 102 Cal.App.4th 421, is not a flat-out prohibition on ex parte, in camera bail increase hearings. *Alberto* addressed whether a second trial judge could reverse a prior judge's increase in bail, and held such an action violated principles of comity, not the bail statutes. (*Id.* at pp. 427–431.)

the public from certain criminal proceedings, (b) disclosure to the defendant of the gist or substance of the government's *ex parte* submission, and (c) careful scrutiny by the [trial] court of the reliability of the *ex parte* evidence." (*Abuhamra*, at p. 329.)

In addition to the four *Waller* factors, *Abuhamra* goes beyond *Waller* and adopts two additional procedural safeguards. Most important here, the third step in *Abuhamra*'s analysis requires scrutiny of the reliability of the information. In *Abuhamra*, the court pointed out that "[p]recisely because *ex parte* submissions are not tested for reliability in the usual adversarial crucible, a judicial officer who receives such evidence 'has the singular responsibility for ensuring that he has been provided with all the facts and circumstances necessary to make an informed assessment of reliability.' [Citation.] In a case such as this, in which, as defendant notes, the *ex parte* evidence is 'a hearsay affidavit based upon information supplied by another person or persons,' [citation] the court must carefully consider the totality of the circumstances in assessing the reliability of the evidence. For example, where an informant is involved, the court may consider: the source's past record for reliability; his relationship, if any, to the defendant; his motive for providing the evidence at issue; the specificity of the information disclosed; the circumstances under which the evidence was procured and disclosed; the confidential source's willingness to testify to this information, at least *ex parte*, in the bail proceeding and, if not, the reasons for that decision; the consequences faced by the confidential source if his disclosures prove false; and the degree to which the disclosures are, or can be, corroborated by other evidence. [Citation.]" (*Abuhamra*, *supra*, 389 F.3d at pp. 331–332.)

As there is a paucity of law on the use of confidential information to raise bail, we borrow from Fourth Amendment jurisprudence. When a magistrate is evaluating whether probable cause exists to issue a search warrant, an informant's tip is scrutinized under the totality of the circumstances test, requiring a consideration of the veracity, reliability and basis of knowledge of the informant. (*Illinois v. Gates* (1983) 462 U.S. 213, 238–239 [103 S.Ct. 2317, 76 L.Ed.2d 527].) There is no rigid formula, and a strong showing in one area may compensate for a deficiency in another. (*Id.* at p. 233.) "If, for example, a

12

particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. [Citation.] Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. [Citation.] Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." (*Id*. at pp. 233–234, fn. omitted.) "'"[V]eracity," "reliability," and "basis of knowledge" are weighed together with any other evidence that supports the finding of probable cause. They are viewed cumulatively, not as independent links in a chain. [Citation.]'" (*Higgason v. Superior Court* (1985) 170 Cal.App.3d 929, 937.) "[T]he quantum of detail, particularly as it describes subsequently verified future activity, is regarded as a significant factor in assessing the informant's reliability, unless, of course, the independent police investigation reveals patently criminal activity." (*People v. Lissauer* (1985) 169 Cal.App.3d 413, 423.)

The informant must establish his or her reliability and that the information has a factual basis. (*Illinois v. Gates*, *supra*, 462 U.S. at p. 230.) "The rule that the affiant must demonstrate a tipster's probable reliability or credibility arises not only from the usual distrust of hearsay evidence but also from an assumption that information provided by customary police sources is inherently suspect." (*People v. Kurland* (1980) 28 Cal.3d 376, 392.) The type of informant, the type of evidence (hearsay or personal knowledge) and whether the evidence is corroborated all work together to determine whether probable cause exists. The reliability of an informant can be confirmed in a variety of ways, "as by corroboration of the information received [citations], the informant's previous record of accuracy in similar situations [citation], or indications that the informant has spoken against penal interest. [Citation.]" (*Ibid.*)

With respect to the type of informant, we have distinguished between those informants who "are often criminally disposed or implicated, and supply their 'tips' . . . in secret, and for pecuniary or other personal gain" and victims or chance witnesses of crime who "volunteer their information fortuitously, openly, and through motives of good citizenship." (*People v. Ramey* (1976) 16 Cal.3d 263, 268–269.) Citizen informants are presumptively deemed reliable. (*Ibid.*) Further, "[i]nformation received from sources who are themselves the focus of pending criminal charges or investigations is inherently suspect." (*People v. Campa* (1984) 36 Cal.3d 870, 882.) Before a person supplying information can be regarded as a citizen informant, the affidavit must set forth the circumstances that justify an inference of that status. (*People v. Smith* (1976) 17 Cal.3d 845, 852.) A person's status as a citizen informant affects only the person's credibility, not the sufficiency of information provided to establish probable cause. (*Bailey v. Superior Court* (1992) 11 Cal.App.4th 1107, 1113.)

Further, although hearsay may be used, where the informant is untested the hearsay has little value if the information is lacking in detail and is uncorroborated. (*People v. French* (2011) 201 Cal.App.4th 1307, 1317.) On the other hand, where an informant has no track record yet the information is set forth on the basis of personal knowledge, this may compensate for a "less than conclusive" demonstration of credibility. (*Ibid.*)

Corroboration is required for unverified information from an untested or unreliable informant. "'Because unverified information from an untested or unreliable informant is ordinarily unreliable, it does not establish probable cause unless it is "corroborated in essential respects by other facts, sources or circumstances." [Citations.]'" (*People v. Gotfried* (2003) 107 Cal.App.4th 254, 263.) Adequate corroboration is found where police investigation has uncovered indications of criminal activity consistent with the informant's information. "'Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light.'" (*Id.* at p. 264.)

Lastly, "The opinions of an experienced officer may legitimately be considered by the magistrate in making the probable cause determination." (*People v. Deutsch* (1996) 44 Cal.App.4th 1224, 1232.)

Our examination of the in camera proceedings indicates the trial court made no effort to ascertain the reliability of the prosecution's confidential information. Instead, the trial court accepted the prosecution's claims of reliability at face value. No percipient witnesses were called and the prosecution relied on hearsay testimony. No other corroborating evidence of the serious charge against defendant was presented.[6] The dangers of hearsay evidence in informant affidavits are well-known. "Although hearsay may be relied upon in seeking a search warrant, the hearsay has little value where the informant is untested and the information is uncorroborated and lacking in detail." (*People v. French*, *supra*, 201 Cal.App.4th at p. 1317.)

### B.

The second *Abuhamra*, *supra*, 389 F.3d 309 procedural step requires that, at a minimum, *some* disclosure be made to the defendant of the "gist" or substance of the government's basis for seeking relief. This step is consistent with the second and third *Waller*, *supra*, 467 U.S. 39 factors, and *Waller* contemplated that in some cases, the proceedings could be completely closed to the defendant. *Abuhamra,* on the other hand, mandates at least the disclosure of the substance of the prosecution's information. Here, as defendant has deduced, confidential information was used in revoking his bail and increasing the amount.

Courts have long recognized an informant privilege and the policy reasons underlying the privilege. (*People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*); *McCray v. Illinois* (1967) 386 U.S. 300, 308–309 [87 S.Ct. 1056, 18 L.Ed.2d 62].) The common law privilege to refuse disclosure of the identity of a confidential informant is codified in Evidence Code section 1041, which provides that a public entity has a privilege to refuse to

---

[6] While it is not the basis for our reversal, we note the trial court failed to have the witness sworn before testifying.

disclose the identity of an informant.[7]  The primary policies served by this privilege are twofold:  to encourage citizens to report crimes regardless of their motives for doing so and to avoid inhibiting law enforcement's necessary use of professional informants.  (*McCray*, at pp. 308–309.)

The scope of the privilege is limited by its underlying purpose.  Where disclosure of the contents of a communication will not tend to reveal an informant's identity, the contents are not privileged.  The privilege is also limited by notions of fundamental fairness.  Where disclosure of an informant's identity, or the contents of his communications, is relevant and helpful to an accused's defense or to a fair determination of a cause, the privilege must yield.  The trial court may order disclosure and, if the government refuses, may dismiss the action.  (*Hobbs*, *supra*, 7 Cal.4th at pp. 958–959, citing *Roviaro v. United States* (1956) 353 U.S. 53, 60–61 [77 S.Ct. 623, 1 L.Ed.2d 639].)  Whether or not disclosure is relevant to a defense or a fair determination of a cause turns largely on whether the informant is also a material witness on the issue of guilt.  (*Hobbs*, at p. 959.)

In *Hobbs*, *supra*, 7 Cal.4th 948, the court addressed a challenge to a search warrant based upon information obtained from an informant.  The information was placed under seal in order to avoid disclosing the identity of the informant, and the trial court conducted a hearing, a portion of which was held in camera, on defendant's related motions to disclose the sealed materials, quash the search warrant and suppress any evidence seized thereunder, traverse the warrant, and discover the identity of the confidential informant.  (*Id.* at pp. 954–955.)  *Hobbs* noted that "'if disclosure of the contents of [the informant's] statement would tend to disclose the identity of the informer, the communication itself should come within the [informant] privilege. . . .'"  (*Hobbs*, at p. 962.)  *Hobbs* discussed the procedure to follow in the context of evaluating a defendant's access to the information underlying a

_____

[7] Evidence Code section 1041 which provides that a public entity has a privilege to refuse to disclose the identity of an informant, and to prevent anyone else from doing so, if the informant has disclosed a violation of law to a law enforcement officer, and the necessity of preserving the confidentiality of his or her identity outweighs the necessity for disclosure in the interest of justice.  (Evid. Code, § 1041, subds. (a)(2), (b)(1).)

search warrant, principles which are no less applicable in the context of an ex parte in camera bail hearing. *Hobbs* provided that with respect to the scope of materials to be made available to the defendant, the trial court should consider whether the affidavit or any part of it was properly sealed and whether additional portions may be redacted and divulged. The prosecutor may be present, and defendant and his lawyer are excluded unless the prosecutor consents to their presence. Further, defense counsel should be allowed to submit written questions of a reasonable length, which the trial judge will then ask of any witnesses called to testify at the in camera proceeding. As the defendant may be unable to specify what materials the court should review in camera, the court must take it upon itself to examine the affidavit for inconsistencies or insufficiencies regarding the showing of probable cause, and inform the prosecution of the materials or witnesses it requires. As the defendant's access to the essence of the affidavit is restricted, the trial court may also, in its discretion, find it necessary to call other witnesses it deems necessary to rule upon the issues. If an informant is called as a witness, steps may be taken to protect his or her identity, including holding the in camera hearing. (*Id.* at pp. 972–973; accord, *Abuhamra*, *supra*, 389 F.3d at p. 329 ["We similarly conclude that a district court presented with a request to submit evidence ex parte should require the government to demonstrate that it proposes to put under seal only those materials (or portions of materials) that would genuinely be compromised by disclosure to the defendant. Every reasonable effort at redaction should be explored. Further, the court should require the government to demonstrate that there are no alternative means by which the government could present in open court, or the defense could be given access to, the information that supports its opposition to bail"].)

Here, the trial court expressly applied *Waller*, *supra*, 467 U.S. 39 in concluding that nothing could be revealed to defendant except that his bail had been astronomically increased. However, as outlined in *Hobbs*, *supra*, 7 Cal.4th at pp. 972–973, steps may be taken to safeguard the identity of informants such that they can appear before the court in camera and present live testimony at which time the court can evaluate their credibility.

17

Here, the trial court concluded the nature of the information could not be disclosed to defendant under any circumstances. Our review of the in camera proceedings indicates the trial court appears to have acceded, without its own independent analysis, to the prosecution's evaluation of the information that nothing could be revealed to the defendant. Further, the court did not even consider permitting the defendant to submit questions. As a result, the matter must be remanded for the trial court to conduct an in camera proceeding that includes its explicated evaluation of what, if any, information can be made available to the defendant and whether defendant should be able to submit questions that will ensure due process while at the same time protecting confidential information. In sum, the court is to reconsider whether any kind of disclosure can be made to defendant, or whether this case presents the "rarest of circumstances" such that the bail hearing must remain closed.[8]

## C.

Lastly, we reject the People's contention that section 1289 can be read literally to sanction ex parte bail revocation hearings on the theory that the statute's inclusion of a phrase requiring mandatory notice to the prosecution can be read to imply no notice need be given to defendant. Ordinarily, the enumeration of one item in a statute implies that the Legislature intended to exclude others. (*People v. Guzman* (2005) 35 Cal.4th 577, 588.) However, this principle is not applied if the result would be contrary to legislative intent or when no manifest reason appears for excluding one matter and including another. (*People v. Anzalone* (1999) 19 Cal.4th 1074, 1079.) Here, in light of the constitutional rights at stake, we interpret the inclusion of mandatory notice to the prosecution to mean not that no notice need be given to defendant, but that where a defendant seeks a reduction in bail, the societal interest in ensuring the propriety of the proceedings and the prosecution's interest in refuting or opposing the request, mandate such notice.

---

[8] Indeed, holding a hearing where these procedures are considered and used to the extent possible will also accommodate defendant's corollary Sixth Amendment rights, namely, the right to counsel and the right to confront witnesses.

## DISPOSITION

The petition for writ of habeas corpus is granted. The trial court is directed to vacate its order of March 14, 2013 and reinstate defendant's bail at $90,000. Should the prosecution desire to reinstitute proceedings to increase defendant's bail, the trial court is to conduct further proceedings consistent with the views and procedural steps described in this opinion. The original reporter's transcript of the March 14, 2013 hearing shall remain under seal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.