**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOSEPH NJUGUNA NJONGE,

Petitioner-Appellant,

v.

MARGARET GILBERT, Superintendent,

Respondent-Appellee.

No.    18-35396

D.C. No. 2:17-cv-01035-RSM

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted May 15, 2019
Seattle, Washington

Before:  O'SCANNLAIN, KLEINFELD, and FRIEDLAND, Circuit Judges.

Joseph Njonge appeals the district court's denial of his petition for a writ of

habeas corpus following his conviction for second-degree murder in Washington

state court.  On appeal, Njonge argues that he is entitled to relief because the state

trial court violated his Sixth Amendment right to a public trial.  Because the facts

are known to the parties, we repeat them only as necessary to explain our decision.

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

I

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, where the state court decision is *neither* contrary to clearly established federal law *nor* an unreasonable determination of the facts, a federal court may not grant a petition for habeas relief. However, where the state court decision *is* contrary to clearly established federal law *or* an unreasonable determination of the facts, the constraints of AEDPA do not apply to this court's review. *See Barker v. Fleming*, 423 F.3d 1085, 1095 (9th Cir. 2005). Rather, this court reviews the claim de novo to determine whether the petitioner is entitled to habeas relief because he "is in custody in violation of the Constitution." 28 U.S.C. § 2254(a); *see Barker*, 423 F.3d at 1095.

II

Here, however, we need not decide whether the decision of the Washington state court was contrary to clearly established federal law or an unreasonable determination of the facts. Assuming that we are not bound by the constraints of

AEDPA, we nonetheless must conclude on de novo review that the district court's denial of the habeas petition was proper because Njonge failed to establish a constitutional violation.

The Sixth Amendment public trial right does not attach to the proceedings of one morning session of voir dire where the court addressed only personal hardship and scheduling commitments of prospective jurors. *See United States v. Ivester*, 316 F.3d 955, 958–59 (9th Cir. 2003). "[T]he right to a public trial does not extend to every moment of trial." *Id.* at 959; *see United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012). Rather, there are some closures that are "too trivial to implicate the Sixth Amendment guarantee." *Ivester*, 316 F.3d at 960. This includes closures of "routine jury administrative matters that have no bearing on [the defendant's] ultimate guilt or innocence" because such closures do not implicate the values served by the public trial right. *Id.* The proceedings at issue here are such "routine jury administrative matters." We are not persuaded that one prospective juror's unprompted mention of personal concerns with the trial during such session requires a conclusion otherwise where the trial judge did not address such concerns during the closed session, but did so at length during the open afternoon session before excusing such juror with the agreement of both parties.

Because the alleged closure does not implicate Njonge's public trial right and Njonge raises no other constitutional violations on appeal, his petition for a

writ of habeas corpus was properly denied.

**AFFIRMED.**

FILED

JUL 24 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Kleinfeld, Senior Circuit Judge, dissenting

I respectfully dissent.

The trial judge excluded the public, including the defendant's family and supporters, from the first morning of voir dire. She had a practical reason for doing so—the venire filled the courtroom so there was no room for the public. But the exclusion was clearly contrary to holdings of the United States Supreme Court. The Court has held that the First Amendment and the Sixth Amendment establish constitutional rights of the public and the defendant to public trial, including voir dire. We held in *United States v. Ivester* that "trivial" exclusions do not amount to violations of these rights,[1] but we held in *United States v. Rivera* that the exclusion there was not "trivial."[2] The exclusion in this case was too long and substantial, and the voir dire too eventful, to be deemed "trivial." Our decision in *Ivester* cannot, consistently with Supreme Court holdings, and with our own holding in *Rivera*, be extended to the exclusion in this case.

We characterized the closure in *Ivester* as "administrative" and "very brief in

---

[1] 316 F.3d 955, 960 (9th Cir. 2003).

[2] 682 F.3d 1223, 1232 (9th Cir. 2012).

duration," citing *Peterson v. Williams*[3] for the proposition that a "closure of twenty minutes was too trivial."[4]  By contrast, we held in *Rivera* that exclusion of family members from a thirty-five minute sentencing was not "trivial," because the presence of the public, especially of family and friends, "reminds the participants, especially the judge, that the consequences of their actions extend to the broader community."[5]

To be permissible at all, our "trivial" exception to the constitutional right to public trial must be carefully and narrowly confined.  As the Court noted in *In re Oliver*, the constitutional right to "public" trial  has ancient roots in our common law heritage, on account of the excesses of the Court of Star Chamber, the Spanish inquisition, and the French lettre de cachet.[6]  *Press-Enterprise Co. v. Superior Court*[7] and *Presley v. Georgia*,[8] hold that the right to public trial applies to voir

---

[3] 85 F.3d 39, 43 (2d Cir. 1996).

[4] *Ivester*, 316 F.3d at 960.

[5] 682 F.3d at 1230, 1232.

[6] 333 U.S. 257, 266-69 (1948).

[7] 464 U.S. 501, 510 (1984).

[8] 558 U.S. 209, 213 (2010) (per curiam).

dire. *Presley* also holds that the trial court cannot excuse the public without considering reasonable alternatives and making sufficient findings supporting closure. The Supreme Court went so far as to provide practical advice in *Presley* for addressing the common circumstance of insufficient room in the courtroom for venire and spectators: "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members."[9]

The trial judge in the case before us did not provide any reason for excluding the public from the first morning of voir dire beyond shortage of space in the courtroom. She did not explain, nor so far as the record indicates, consider, reserving a row or two for the public or dividing the venire so that space could be left for the public, with an admonition to jurors not to interact with the spectators.

During the morning of the voir dire at which the public, including Njonge's family and friends, were excluded, quite a few jurors—the judge said that she had "never quite [had] this many hardships for [such a] medium length case"—gave reasons why they should be excused. Of course, the granting and denial of excuses

---

[9] 558 U.S. at 215.

can easily be seen by suspicious defendants and their families as a means of biasing a jury. Njonge says in his affidavit that he wanted his family and friends there to show the jurors that he had community support.

Like many voir dires, this one also had a surprise. Asked about general hardship, juror no. 7 said: "It is personal for me. It goes deeper than just work. I lived in Indonesia for a couple of years and that society in dealing with persecution and the suppression of women and this whole situation, this whole case is going to be very disturbing for me."

A juror saying something that might bias the whole panel when the judge elicits their reasons for wanting to be excused is a common phenomenon. Just because the judge and the lawyers expect a "trivial" recitation of "routine jury administrative matters" does not mean they will get that. What they got instead, not very surprisingly, was an expression that might be taken to invite jury prejudice against the Kenyan defendant.

Trial lawyers know that they cannot count on much that occurs before the jurors to be "trivial" and without potential effect on the outcome, and the

credibility afforded to remarks by fellow jurors can give such comments outsized importance. Njonge's wish to show the jury by their presence that his family and community supported him might have been a good strategy or a bad one—but it was his decision. And juror no. 7's remark was not necessarily trivial. "First impressions are made" during jury selection and a "juror's feelings about drugs, aliens, mules, guns, or gangs, are all volatile issues" requiring inquiry.[10] The prospective juror's remark about "persecution and the suppression of women and this whole situation" might (or might not) poison the jury. The portion of voir dire during which it occurred cannot be characterized as so "trivial" that the right to public trial did not attach, even though the court might have expected the entire morning to be of no significance to conviction or acquittal. That was a gamble the trial court lost.

For these reasons, I am unable to join the majority disposition.

---

[10] Federal Defenders of San Diego, Inc., *Defending a Federal Criminal Case* § 8.00, at 8-311, 8-317 (1992).