

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**No. PD-1427-13**

---

**VANESSA CAMERON, Appellant**

**V.**

**THE STATE OF TEXAS**

---

**ON THE STATE'S PETITION
FOR DISCRETIONARY REVIEW
FROM THE FOURTH COURT OF APPEALS,
BEXAR COUNTY**

---

*Womack, J., delivered the opinion of the Court, in which Price, Johnson, Cochran, and Alcala, JJ., joined. Keller, P.J., filed a dissenting opinion, in which Hervey, J., joined. Keasler, J., concurred in the judgment. Meyers, J., dissented.*

The appellant, Vanessa Cameron, contends that her constitutional right to a public trial was violated when the trial court excluded the public from the *voir dire* at the beginning of her trial for murder. She appealed from the judgment of conviction and

sentence of 70 years' imprisonment and a $5,000 fine. The Fourth Court of Appeals

reversed her conviction,[1] and we granted review. We shall affirm the Court of Appeals'

judgment remanding the case for a new trial.

Trial Proceedings

Before *voir dire* was begun, the bailiff removed all spectators from the courtroom. After

the venire panel was seated and the judge called the case, the appellant's counsel stated:

> I noticed prior to the Court calling the case for trial, the bailiff ushered out or
> secluded the general public, to include family and friends of my client. I would
> ask that family and friends be allowed to be present here in the courtroom during
> the *voir dire*. They're excluded and I — if they're excluded, I would just put for
> the record an objection to the 6th Amendment of the U.S. Constitution and Article
> 1, Section 10 of the Texas Constitution since she does have a right to the public
> trial.

A lengthy debate followed:

The Court: We recognize their right to be present during the *voir dire*. I'm looking around the courtroom, and the jury panel – we have 65 jury panel members that are going to be here. I notice for the record that every single chair that we have available for attorneys that come in during trial and every chair that we have available for other people have been removed and placed in the jury area because that is the only way we can accommodate the number of jurors in this courtroom.

So we're talking about 65 jury panel members. It's going to take up a huge majority of this courtroom, plus counsel table. I don't see any room whatsoever where anybody else would be able to sit and observe.

Now, during – before we called the case, we saw a pretty significant number of family members that were walking in. There is no way this courtroom can accommodate them, and I certainly appreciate the security concerns of the State – excuse me, of the sheriff's department. It is a public trial. It's an open trial. Certainly people have the opportunity to observe. We just don't know where to put them, Mr. Esparza.

Defense: Judge, is the Court overruling my objection?

---

[1] *Cameron v. State,* 415 S.W.3d 404 (Tex. App. – San Antonio 2013).

The Court:  No, I'm not ruling. I'm just telling you, where can we put them? Where are we going to put them?

Defense:  I understand, Judge.

The Court:  I'm not overruling you. Where are we going to put them?

Defense:  And I still request a ruling from the Court.

The Court:  Well, you're – you're objecting to something I haven't made a ruling. What is it that you're objecting to?

Defense:  That the public has been excluded from –

The Court:  No. No, no. The Court has never ruled that. I've never ruled that the public is excluded. All I'm saying, where do you suggest we put them?

Defense:  We could bring in chairs and put them right here in front of the bench, Judge. We can find places to put them.

The Court:  Okay. We have attorneys that are seated at both sides. We have security issues. That is unreasonable. Where would we put them? Are we going to have them stand here next to the – next to me? That – I think that would be considered a security risk. You want to open up those doors and have them all stand in that little hallway there so they can observe the whole thing? Maybe we could do that. Would that satisfy you?

Defense:  I just wanted an alternative, Judge.

The Court:  I'm giving you alternatives. Which one would satisfy you in a way that the bailiffs would feel that their job in keeping the courtroom safe and secure would be satisfied?

Defense:  I can't suggest that. If you want to open those doors and put chairs and have people – have the public sit there, that's fine with me.

The Court:  We don't have enough chairs. Are we going to – if you want, we can open up those doors in the back and have them stand to where they can observe and hear every single thing that's going on.[2]

The State:  And, Your Honor, just for the record, I think that's going to be in violation of any

---

[2] Nothing in the record indicates to us that this was attempted.

fire codes in this city.

The Court:     And that – I mean, we're having issues. Counsel obviously wants her entire family here. I mean, I don't know what else we could do. The courtroom's going to be absolutely stuffed with venire panel members. I don't know what we're going to do.

Defense:     But there's no ruling from the Court on my objection.

The Court:     Your objection is that people have been excluded from the Court.

Defense:     Yes sir.

The Court:     The Court has never ruled that way, so I'm not sure what it is that you're objecting to. ...
          I am telling you that you can have people in this courtroom. I'm telling you that. Do you understand that? So there's no issue in regards to what it is that you're asking. I just don't know where to put them. So I'm not making a ruling that anybody's excluded. I'm not making a ruling denying anything you're asking because I haven't ruled on what it is that you're asking. I haven't told you that you cannot have people in the courtroom. Tell me where to put them and we'll put members of her family.

Defense:     Okay. Thank you, Judge.

After this, the court went off the record and apparently continued the discussion, but there is no indication that any spectators were allowed into the court room.

Sometime after lunch and in the middle of the State's *voir dire*, the trial court added:

All right. And while we're on the record and the jury is out, I know that the State is still in the middle of their general *voir dire*. I just want to put something on the record.
          Earlier defense asked if members of the defendant's family or other members could sit in, observe portions of the *voir dire*. The Court did not close the proceedings by any means, recognizing the 1st and 6th Amendment rights to the extent of the *voir dire* proceedings.
          During the course of discussions, the Court did analyze the four-prong questions tested out in 467 U.S. 39. Specifically, the Court considered the size and configuration of the courtroom. 65 venire panel members have been summoned to the courtroom. In order to accommodate all 65, there are about ten chairs that are placed in the gallery. Additionally, there are three or – three other chairs located

next to the jury box. Every single chair in the gallery and in the jury box is filled with the 65 individuals.

   The court reporter is seated directly in front of the defense table directly in front of the jury box, so there would be no room there. Directly in front of the defense table there is a table used by the probation department that has a computer, a printer, some files. Directly next to the defense table is a panel that has been set up by the defense for use during *voir dire*. Directly behind that panel is a box where the bailiffs sit, a bailiff's table.

   The Court considered the size of the configuration. Court also considered alternative courts, knowing that the juries – the central jury room is not adequately sufficient for a trial such as this. Also, the Court is expecting a potentially emotionally charged jury trial, this originally being filed, I believe, as a capital. I know that it is now a murder charge.

   As such, the space within the courtroom area for the participants and the bailiffs is very narrow. The Court does not want to make any jury or potential jurors feel in any way constrained with truthfulness and honesty, making them uncomfortable in regards to potential family members next to them.

   Essentially, the bottom line is that the Court was concerned about safety and safety in the courtroom. Recognizing that the courtroom is not closed, Defense, before you begin your general *voir dire*, you're certainly able to bring in some family members and we will do our best to accommodate them in areas around the gallery where the Court, where the bailiffs feel security will not be an issue. All right. Just wanted to put that on the record.[3]

This was the last the issue was discussed. The appellant was found guilty of murder by the jury, and the court assessed a sentence of 70 years' imprisonment and a $5,000 fine.

Law

"In all criminal prosecutions, the accused shall enjoy the right to a ... public trial ...."[4]

This right extends to *voir dire* proceedings[5] and is necessary to insure that jurors, prosecutors, and the court are kept aware of their sense of responsibility and  can properly carry out their

---

[3] Again, the record does not indicate that this actually happened.

[4] U.S. CONST. AMEND. VI.

[5] *Presley v. Georgia,* 558 U.S. 209, 214 (2010); *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501 (1984).

functions.[6] It discourages perjury by holding parties responsible to the public.[7] A violation of this right is a structural error and does not require any showing of harm.[8]

The right to a public trial may give way to other competing rights or interests (such as a defendant's right to a fair trial). However, these circumstances should be rare, occurring only if: (1) there is an overriding interest (2) based on findings (3) that closure is essential to preserve higher values and (4) the closure is narrowly tailored to protect that value.[9] Further, the trial court must issue findings specific enough for a reviewing court to determine if the closure was properly ordered.[10]

The party seeking to justify the closure carries the burden of proof of a specific overriding interest. It must be likely that this interest would be prejudiced in the current case, and the closure must be no broader than necessary. The trial court has the burden to consider *all* reasonable alternatives and make findings specific enough to support a closure.[11]

Preservation of Error

The State argues that the appellant did not preserve her complaint for appeal. As we view it, the record shows very clearly that the appellant's trial counsel brought the issue of the closed

---

[6] *Waller v. Georgia*, 467 U.S. 39, 46 (1984), *quoting In re Oliver,* 333 U.S. 257, 270 (1948).

[7] *Ibid.*

[8] *Lilly v. Texas,* 365 S.W.3d 321, 328 (Tex. Cr. App. 2012), *citing Johnson v. United States*, 520 U.S. 461, 468-68 (1998).

[9] *Waller,* 467 U.S., at 45; *Press-Enterprise*, 464 U.S., at 510.

[10] *Ibid.*

[11] *Waller,* 467 U.S., at 48; *see also Lilly,* 365 S.W.3d, at 329.

courtroom to the attention of the trial court. The court acknowledged the appellant's Sixth Amendment rights and then stated that the courtroom was not closed. Counsel then requested (at least six separate times) that the court rule on his objection, but the court declined to rule.

Texas Rule of Appellate Procedure 33.1 clearly states that, in order to preserve error, the record must show that the trial court either "ruled on the request, objection, or motion either expressly or implicitly *or refused to rule on the request, objection, or motion,* and the complaining party objected to the refusal." This happened below.

Was the appellant's trial closed?

The preliminary question is whether the appellant's trial was in fact closed.[12] This is a question to be determined on a case-by-case basis in light of the totality of the evidence.[13]

The State argues that the lower court erred in disregarding the trial court's findings based on a silent record. But the record in this case is not silent. On the contrary, there are several pages of discussion about the exclusion of the public. As soon as the court went on the record, the appellant's counsel objected to the removal of the public. While it is true that the trial court repeatedly stated that the courtroom was not closed, there was no dispute of the fact that all spectators had been removed. It is well established that "this Court accepts as true factual

---

[12] The State argues in its third ground for review that the Court of Appeals erred by not first and separately considering the issue of closure as required under *Lilly.* It is true that *Lilly* states "the first step for a reviewing court when analyzing whether a defendant's right to a public trial was violated is to determine if the trial was, in fact, closed to the public. Once it is determined that the defendant's trial was closed to the public, the reviewing court decides whether that closure was proper." *Lilly,* 365 S.W.3d, at 329. Although this order of analysis is preferable, we were able to review the Fourth Court's opinion, which covered the essential issues.

[13] *Lilly,* 365 S.W.3d, at 330.

assertions made by counsel which are not disputed by opposing counsel."[14] Accordingly, we accept as true that the appellant's friends and family were ushered out of the courtroom and not allowed back in.

Indeed, far from disputing these facts, the trial judge sought to justify them. Were the *voir dire* proceedings actually open to the public, the trial judge would not have needed to cite space limitations and safety concerns as reasons to keep the public out. The trial court stated that he could not "accommodate" the appellant's friends and family and that "every single chair" was being used by the venire panel. Halfway through the State's *voir dire* examination, the trial court went on the record and described the cramped conditions of the courtroom at length. He then made findings in accordance with the Supreme Court's *Waller* opinion. These findings track the test for whether or not a closure was justified. Again, were the *voir dire* proceedings actually open, there would be no need for a *Waller* analysis.

The State relies heavily on the fact that the trial court repeatedly stated that he had not ruled that the courtroom was closed. He stated repeatedly that he respected and recognized the appellant's right to a public trial, that he was not ruling, and that he had not ruled, that the court was closed. We ordinarily defer to a trial court's findings of fact. But the judge's own statements show that there was no room in the court for spectators; he all but conceded that no one was allowed to witness *voir dire*.

The record sufficiently shows that the *voir dire* proceedings were closed.

---

[14] *Thieleman v. State,* 187 S.W.3d 455, 457 (Tex. Cr. App. 2005), *citing Pitts v. State,* 916 S.W.2d 507, 510 (Tex. Cr. App. 1996); *Resanovich v. State*, 906 S.W.2d 40, 42 (Tex. Cr. App. 1995).

## Was the closure justified?

Having held that the *voir dire* proceedings were, in fact, closed to the public, we move on to the *Waller* test to determine if this closure was constitutionally justified under the Sixth Amendment.

Under *Waller,* a closure will be justified only if the trial court makes findings that closure is necessary to protect an overriding interest and the closure is narrowly tailored to protect that interest.[15] A court also must consider all reasonable alternatives to closure.[16]

In this case, the trial judge's findings cited several interests to justify the exclusion of the public. First, he cited the "size and configuration of the courtroom" and the fact that every chair was used for the venire panel. Next, the court expressed general concerns about safety. Finally, the court explained that he expected the trial to be emotionally charged.

While concerns over space and overcrowding may be legitimate concerns of a trial court, they must not outweigh a defendant's Sixth Amendment rights. In part, this is because there are readily available alternatives to fix these problems. Both this Court and the Supreme Court have suggested that, in such situations, a trial court should move to a bigger courtroom or split the panel in half. It is no valid argument that these alternatives are inconvenient or would cause delay.[17]

Next, while security issues can be overriding enough to justify a closure, vague or general

---

[15] *Waller,* 467 U.S., at 45.

[16] *Presley,* 588 U.S. at 215; *Steadman v. State*, 360 S.W.3d 499, 509 (Tex. Cr. App. 2012).

[17] *Steadman*, 360 S.W.3d at 509.

concerns are not sufficient.[18]  The trial court did not make any specific findings concerning specific dangers that would *likely* (not just possibly) occur. On this record, there are only vague mentions of "security concerns" such as "fire code issues" and "police detection issues." At no point did the trial court make case-specific findings about a security interest that was *likely* to be prejudiced. The only case-specific issue in the record came from one of the bailiffs, who stated in an affidavit that the appellant's mother was a law-enforcement officer who could have legally brought her firearm into the courtroom. However, this concern is a mere hypothetical that was not investigated or adopted by the court. Further, there is no evidence that alternatives were considered (such as asking the appellant's mother to relinquish her firearm).

Finally, we reject the trial court's assertion that the public would prevent the jurors from being truthful. This goes against the entire logic behind the right to a public trial. As the Supreme Court has stated:

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. ... In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and *discourages perjury*.[19]

 As well as:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential

---

[18] *Presley,* 558 U.S. at 215-16.

[19] *Waller,* 467 U.S., at 46 (emphasis added).

to public confidence in the system.[20]

These great values, which help to keep our criminal justice system just, could be completely eroded if a trial judge could close a trial because open testimony *might* make some jurors uncomfortable. This is not an argument that we can accept.

Conclusion

The opinion of the Court of Appeals is affirmed. The trial court was closed at a critical stage at the proceedings. Further, the trial court did not make findings to support a legitimate overriding interest for this closure.[21]

We affirm the judgment of the Court of Appeals remanding the case for a new trial.

Delivered October 8, 2014.
Publish.

---

[20] *Press-Enterprise*, 464 U.S., at 510.

[21] Another issue of which we granted review, which asked who bears the burden to demonstrate that the proceedings were closed, is dismissed.