**Vanessa CAMERON, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 04-12-00294-CR**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: July 12, 2017

Discretionary Review Refused
October 25, 2017

Rehearing Denied December 13, 2017

---

APPELLANT ATTORNEY: Gerald H. Goldstein, Goldstein, Goldstein & Hilley, 310 S. Saint Mary's St., Ste. 2900, San Antonio, TX 78205, Donald H. Flanary III, Flanary Law Firm, 1005 South Alamo Street, San Antonio, TX 78210.

APPELLEE ATTORNEY: Jay Brandon, Assistant District Attorney, 101 W. Nueva, 3rd Floor, San Antonio, TX 78205.

Sitting: Karen Angelini, Justice, Rebeca C. Martinez, Justice, Irene Rios, Justice

## OPINION

Opinion by: Rebeca C. Martinez, Justice

This case is before us on remand from the Court of Criminal Appeals. Vanessa Cameron was convicted of the murder for hire of her child's father and sentenced to seventy years in prison. On appeal, Cameron raised several issues, including that she was deprived of her constitutional right to a public trial during voir dire. A majority of this court agreed, and we reversed her conviction and remanded for a new trial. The Court of Criminal Appeals initially affirmed, but issued a new opinion on rehearing reversing and remanding. In its opinion on rehearing, the Court held that a defendant bears an initial burden of proof on appeal to show that the courtroom was "in fact closed" to the public before an appellate court may consider whether the closure was justified. The Court therefore reversed and remanded the case for our reconsideration of the public trial issue under the sequential two-step test. *See Cameron v. State*, 490 S.W.3d 57, 70 (Tex.

Crim. App.) (op. on reh'g), *cert. denied*, —— U.S. ——, 137 S.Ct. 95, 196 L.Ed.2d 38 (2016).

## BACKGROUND

The only facts relevant to this appeal are those surrounding the alleged closing of the courtroom to the exclusion of Cameron's family and friends, as well as the public, during the voir dire phase of trial. In a nutshell, Cameron's family and friends were instructed by the bailiffs to leave the courtroom prior to the start of voir dire so the large venire panel could be seated. Cameron's family and friends understood that they were not allowed to re-enter the courtroom during the voir dire proceedings. Defense counsel made the trial court aware they had been excluded from the courtroom and objected to a violation of Cameron's right to a public trial. A lengthy discussion occurred both on and off the record, with the trial court repeatedly stating the courtroom was not "closed" but there was no room for the family or public inside the courtroom to observe voir dire. The relevant statements made by the trial court and counsel on the record are discussed in detail in the Court of Criminal Appeals' opinion as well as the prior majority and dissenting opinions by this court. *See id.* at 65-67; *see also Cameron v. State*, 415 S.W.3d 404, 406-408 (Tex. App.—San Antonio 2013), *rev'd*, 490 S.W.3d 70 (Tex. Crim. App. 2015); *see also id.* at 415-21 (Angelini, J., dissenting).

After Cameron was tried and convicted, she filed a motion for new trial alleging her right to a public trial was violated during voir dire. She attached twelve affidavits from her family and friends stating the bailiffs instructed them to leave the courtroom before the jury panel entered and they did not witness any of the voir dire proceedings. The affidavit by Cameron's mother, a San Antonio police officer,

also states that she requested to come in and sit on the floor during voir dire, but the bailiff denied her request and stated she would be a security risk. The State filed a response to the motion for new trial and attached affidavits from two bailiffs stating they did not close the courtroom to the public during voir dire. One of the bailiffs confirms in his affidavit that he denied the request by Cameron's mother to sit on the floor based on security concerns. The trial court did not hold a hearing on the motion for new trial. It signed an order acknowledging presentment of the motion for new trial and stating the motion would be determined based solely upon the affidavits. Although the court did not enter a written order denying the motion, it adopted the State's proposed findings of fact in opposition to the motion. Specifically, the trial court made the following sixteen findings of fact:

1. The Court never ruled that observers were excluded from the voir dire or any other part of the trial in this case.

2. The defense attorney in this case was more inclined to obtain a ruling from the court and seemed less inclined to accept any solutions offered by the Court.

3. Prior to the venire panel entering the courtroom, the defense attorney never requested the Court to allow him to go outside and bring the defendant's family and friends into the courtroom; nor did he ask for a break to call family and friends to come into the courtroom. The Court made it clear that the public was not excluded from the courtroom.

4. The Court offered to open up the doors in the back of the court and let the public observe from the hall area.

5. The Court attempted to find places for the public to observe from.

6. Suggestions were offered to the attorney for the defense regarding placement of observers, both on and off the record.

7. Both on and off the record, suggestions were requested from the defense attorney as to where he would like the observers to be placed in the courtroom.

8. Besides the time when the Court's bailiffs cleared the courtroom to bring the venirepanel [sic] in and get the panel seated, on two other occasions (one involving a venireman who had a medical episode and another involving a security alarm) the courtroom had to be cleared again.

9. No Court personnel ordered observers to leave the courthouse.

10. The Court did not order the bailiffs or anyone else to tell spectators to leave the courtroom.

11. The Court did not order the bailiffs or anyone else to tell spectators to leave the courthouse.

12. The bailiff's [sic] did not tell spectators that they should leave the courthouse.

13. The bailiff's [sic] did not tell spectators that they would not be allowed to watch the proceedings.

14. If observers had entered after the jury panel was seated, they would have been allowed back in the courtroom by the Court during the proceedings in this case.

15. Prior to voir dire in this case, the Court's bailiffs cleared the courtroom in order to make room to bring the venire panel into the courtroom and to get them organized and seated, but they did not

tell any spectators that they were not allowed to watch the voir dire or any other part of the proceedings in this case.

16. During other trials in the past, including during voir dire proceedings, the 379th Court has had spectators in the courtroom.

## RIGHT TO A PUBLIC TRIAL

The Sixth Amendment guarantees the right to a public trial in all criminal prosecutions. U.S. CONST. amend. VI; *Johnson v. United States*, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). The right extends to the jury selection phase of trial, including voir dire of prospective jurors. *Presley v. Georgia*, 558 U.S. 209, 212-13, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (per curiam). Violation of a criminal defendant's right to a public trial is structural error that does not require a showing of harm. *Johnson*, 520 U.S. at 468-69, 117 S.Ct. 1544; *Steadman v. State*, 360 S.W.3d 499, 510-11 (Tex. Crim. App. 2012).[1]

The Court of Criminal Appeals clarified in its opinion on rehearing in this case that, under *Lilly v. State*, the proper approach to determine whether a defendant's right to a public trial was violated is a sequential two-step analysis. *Cameron*, 490 S.W.3d at 68-69 (citing *Lilly v. State*, 365 S.W.3d 321, 331 (Tex. Crim. App. 2012)). "[T]he initial burden of proof is on the defendant to show that the trial is closed to the public. If the defendant fails

to carry that burden, the analysis is concluded. Only after a trial is closed to the public is it necessary to determine if the closure was justified." *Cameron*, 490 S.W.3d at 69. Under the first step, "[t]o determine if a trial was closed, a reviewing court should look to the totality of the evidence, rather than whether a spectator was actually excluded from trial." *Id.* at 68 (citing *Lilly*, 365 S.W.3d at 331). If the totality of the evidence shows the defendant's trial was closed, then the reviewing court must proceed to the second step and determine whether the closure was justified. *Cameron*, 490 S.W.3d at 68. Under the second step, the reviewing court considers whether the trial court took every reasonable measure to accommodate public attendance before closing the proceeding. *Lilly*, 365 S.W.3d at 331. Under the standards established by the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the closure must be necessary to protect an overriding interest, the closure must be no broader than necessary, the trial court must consider all reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. *Lilly*, 365 S.W.3d at 330-31.

### Standard of Review

In its opinion on rehearing, the Court of Criminal Appeals not only clarified that the *Lilly* analysis is a sequential two-step test, it also clarified the applicable standard of review. *Cameron*, 490

---

1. At all levels of appeals in this case, including on remand, the State has argued that Cameron failed to preserve her public trial issue for review. As the Court of Criminal Appeals similarly concluded in its original opinion, we conclude the record shows "very clearly" that Cameron's counsel made the trial court aware of her complaints concerning the closure of the courtroom during voir dire and the trial court acknowledged her Sixth

Amendment right to a public trial before stating the courtroom was not closed. *See Cameron*, 490 S.W.3d at 61 (opinion superseded on rehearing). Further, the record shows the trial court declined to rule on Cameron's public trial objection multiple times, despite repeated requests by defense counsel. Based on this record, the public trial issue was preserved for review. TEX. R. APP. P. 33.1.

S.W.3d at 69-70. The Court explained that the question of whether a defendant's trial was closed to the public is a mixed question of law and fact that does not turn on credibility and demeanor. *Id.* at 70. Therefore, we defer to the trial court's findings of fact to the extent they are supported by the record. *Id.* (noting such level of deference is "a necessary prerequisite before an appellate court can resolve whether a defendant met his burden to show his trial was closed to the public based on the totality of the evidence").

### *Was the Courtroom Closed?*

■ As all the prior opinions in this case have acknowledged, an unusual situation is presented in which no party sought closure of the courtroom and it is contested whether the courtroom was in fact closed. In determining whether Cameron met her burden to show the voir dire proceedings were actually closed, we consider the totality of the evidence on the issue while deferring to the trial court's fact findings that are supported by the record. *Id.* at 68, 70; *Lilly*, 365 S.W.3d at 330.

As set forth above, the trial court made findings of fact that it did not order the bailiffs or anyone else to tell spectators to leave the courtroom or the courthouse, and the bailiffs did not tell spectators to do so. The trial court made a finding acknowledging that, prior to voir dire, the bailiffs cleared the courtroom[2] "in order to make room to bring the venire panel into the courtroom and to get them organized and seated, but they did not tell any spectators they would not be allowed to watch the voir dire." The trial court further found that, "[p]rior to the venire panel entering the courtroom, the defense attorney never requested the Court to allow him to go outside and bring the defendant's family and friends into the courtroom; nor did he ask for a break to call family and friends to come into the courtroom." Finally, the trial court made fact findings that it "never ruled that observers were excluded from the voir dire," and "made it clear that the public was not excluded from the courtroom."

The record does not support the trial court's findings that the public was not excluded from the courtroom during voir dire. Cameron's counsel stated on the record that the bailiffs told Cameron's family and friends to leave the courtroom before the venire panel arrived and before the judge took the bench, and their affidavits attached to Cameron's motion for new trial confirm their removal and understanding that they would not be permitted to observe voir dire. Moreover, the trial court's own fact findings clearly state that the bailiffs removed all spectators from the courtroom before the venire panel was brought in and seated. The State does not challenge the fact that the public was cleared from the courtroom prior to the venire panel's entry and seating.

The issue then becomes whether the public was permitted to re-enter to observe the voir dire proceedings. The State argues the record is silent as to whether any spectators were allowed back inside the courtroom during any part of the voir dire. We disagree. One of the bailiffs' affidavits confirms that Cameron's mother was not allowed to re-enter the courtroom to observe voir dire, despite her request. While the focus of the *Lilly* test for closure is not on whether a defendant can show the exclusion of any particular person, such evidence is still relevant to show the courtroom was closed. *See Lilly*, 365

---

**2.** The trial court also found that the courtroom was cleared on two other occasions involving a venireman with a medical episode and a security alarm.

S.W.3d at 331 (focus of closure inquiry is the totality of the evidence, rather than exclusion of a particular person). As to whether any other member of the public re-entered the courtroom to observe voir dire, the trial court's own fact findings and statements on the record show it did not happen. By stating in Finding No. 3 that defense counsel never requested permission "to go *outside* and bring the defendant's family and friends *into* the courtroom," or asked for a break "to call family and friends to come into the courtroom," the trial court conceded that the public was not brought back into the courtroom to observe voir dire. In addition, the trial court's statement in Finding No. 14 that, "*if observers had entered* after the jury panel was seated," they would have been allowed back in the courtroom necessarily implies that no public observers re-entered during the voir dire.[3]

Further, the trial court's statements on the record show that the public was not permitted inside the courtroom during voir dire. While the trial court repeatedly stated on the record that the public was "not excluded" from the courtroom, it also stated that, "before we called the case, we saw a pretty significant number of family members that were walking in ... [t]here is no way this courtroom can accommodate them," and due to the 65 venire members and the lack of additional chairs and space, the judge did not "see any room whatsoever where anybody else would be able to sit and observe." Even though reiterating "this is a public trial" and "I've never ruled that the public is excluded," the trial court repeatedly pressed defense counsel for suggestions as to where to put spectators, improperly shifting the duty to accommodate the public from the court to defense counsel. *See Presley*, 558 U.S. at 214, 130

S.Ct. 721; *see also Steadman*, 360 S.W.3d at 505 (no burden on defendant to proffer alternatives). Further, far from refuting that spectators were excluded from the courtroom during voir dire, the trial court sought to justify their exclusion by performing a *Waller* analysis on the record. Midway through voir dire, after the State's portion was completed, the trial court went on the record of its own accord to again describe the lack of space in the courtroom and stated, "[d]uring the course of discussions, the Court did analyze the four-prong [*Waller*] questions." The court then proceeded to detail its consideration of the *Waller* factors, citing the large venire panel, the lack of space for spectators to sit inside the courtroom, jury-contamination issues due to the emotionally charged trial, and courtroom security concerns, and its rejection of other courtrooms such as the central jury room as alternatives. The trial court's findings track the test for whether or not a closure is justified. *See Waller*, 467 U.S. at 48, 104 S.Ct. 2210 (before excluding the public, trial court must make adequate findings showing the closure is necessary to protect an overriding interest, is narrowly tailored, and all reasonable alternatives have been considered). As the Court of Criminal Appeals pointed out in its original opinion, if the voir dire phase had actually been open to the public, the trial court would not have needed to cite space limitations and safety concerns as justifications for excluding the public. *See Cameron*, 490 S.W.3d at 62 (opinion superseded on rehearing).

Although we generally defer to a trial court's findings of fact, we do not do so if the record does not support the findings. *Id.* at 70 (op. on reh'g). Here, the judge's own statements on the record show there was no room in the courtroom for specta-

---

**3.** The affidavit of Tonya Kersey supports this implication by stating that she arrived as late as 4:00 p.m. and was told she could not enter the courtroom during jury selection.

tors during voir dire, and thus undermine its findings of fact that the courtroom was not "closed." We conclude that, based on the totality of the evidence in the record, Cameron met her burden to show the courtroom was in fact closed to the public during the voir dire phase of her trial.

### *Was the Closure Justified?*

■ Having determined that the first step under the *Lilly* analysis has been satisfied, we next determine whether the closure of the courtroom was justified. *Id.* at 68-69; *Lilly*, 365 S.W.3d at 331. As explained in detail in our prior opinion, the trial court did not meet its obligation to consider all reasonable alternatives to accommodate the public before closing the courtroom, particularly the option of splitting the venire panel which was stressed in *Presley. See Presley*, 558 U.S. at 215, 130 S.Ct. 721 (noting that splitting the venire panel is a reasonable accommodation for the public during voir dire which solves space and security concerns).[4] In *Steadman*, the Court of Criminal Appeals held the trial court failed to consider *all* reasonable alternatives as required by *Presley* and *Waller* when it failed to consider "an alternative that would have solved both the jury-contamination issue and the courtroom-security issue: 'dividing the jury venire panel to reduce courtroom congestion.' " *Steadman*, 360 S.W.3d at 509. The trial court made the same mistake in Cameron's case. We therefore conclude the trial court did not fulfill its duty to consider all reasonable alternatives and to provide a reasonable accommodation to the public before closing the courtroom.

### CONCLUSION

Based on the foregoing analysis, we hold that Cameron met her burden to prove the courtroom was closed to the public during voir dire, and that the record shows the trial court failed to consider all reasonable alternatives to closure, in violation of Cameron's Sixth Amendment right to a public trial. Because the error is structural, the trial court's judgment is reversed and the cause is remanded for a new trial. *Presley*, 558 U.S. at 216, 130 S.Ct. 721; *Steadman*, 360 S.W.3d at 510-11.[5]

Karen Angelini, Justice, dissenting

Karen Angelini, Justice, Dissenting.

Because I believe the record supports the trial court's findings, and because I believe Appellant Vanessa Cameron failed to satisfy her burden of showing that voir dire was not open to the public, I respectfully dissent.

The facts of this case are set out in *Cameron v. State*, 490 S.W.3d 57, 65-67 (Tex. Crim. App.) (op. on reh'g), *cert. denied*, —— U.S. ——, 137 S.Ct. 95, 196 L.Ed.2d 38 (2016), and need not be restated. *See also Cameron v. State*, 415 S.W.3d 404, 415-19 (Tex. App.—San Antonio 2013) (Angelini, J., dissenting).

In *Cameron*, 490 S.W.3d at 68, the Texas Court of Criminal Appeals reiterated that in determining whether a defendant's right to a public trial under the Sixth Amendment to the Constitution has been violated, a reviewing court must employ a two-step process. First, a reviewing court must decide whether the defendant met

4. At one point, the trial court offered to open the courtroom doors so the spectators could stand in the foyer outside during voir dire, but when the prosecutor objected to a potential fire code violation, the option was dropped. Nothing in the record shows that any members of the public observed voir dire from the foyer.

5. Based on our disposition of the public trial issue, we need not address Cameron's other appellate issues concerning her motion to suppress and admission of rebuttal evidence.

her burden of showing "the trial was, in fact, closed to the public." *Id.* (citing *Lilly v. State*, 365 S.W.3d 321, 331 (Tex. Crim. App. 2012)); *see id.* at 69 (clarifying that "the burden to show that a trial is closed to the public is on the defendant"). Second, if the defendant met her burden of showing her trial was closed to the public, "the reviewing court *then* must decide whether the closure was proper." *Id.* at 68 (emphasis in original).

In *Cameron*, 490 S.W.3d at 70, the Texas Court of Criminal Appeals also clarified the standard of review applicable to public-trial claims. According to the court, "the question of whether a defendant's trial was closed to the public is a mixed question of law and fact that does not turn on credibility and demeanor." *Id.* "[W]hen dealing with the Sixth Amendment right to a public trial, deferring to the court's findings of fact that are supported by the record is a necessary prerequisite before an appellate court can resolve whether a defendant met [her] burden to show [her] trial was closed to the public based on the totality of the evidence, and then the ultimate legal question of whether a defendant's public-trial right was violated." *Id.*

In this case, the trial court made sixteen findings of fact:

1. The Court never ruled that observers were excluded from the voir dire or any other part of the trial in this case.

2. The defense attorney in this case seemed intent on objecting to a ruling that was not made (members of the public were not excluded from watching voir dire proceedings), and he did not seem serious about bringing members of the defendant's family or her friends back into the courtroom to observe.

3. Prior to the venire panel entering the courtroom, the defense attorney never requested the Court to allow him to go outside and bring the defendant's family and friends into the courtroom; nor did he ask for a break to call family and friends to come into the courtroom. The Court made it clear that the public was not excluded from the courtroom.

4. The Court offered to open up the doors in the back of the court and let the public observe from the hall area.

5. The Court attempted to find places for the public to observe from.

6. Suggestions were offered to the attorney for the defense regarding placement of observers, both on and off the record.

7. Both on and off the record, suggestions were requested from the defense attorney as to where he would like the observers to be placed in the courtroom.

8. Besides the time when the Court's bailiffs cleared the courtroom to bring the venirepanel in and get the panel seated, on two other occasions (one involving a venireman who had a medical episode and another involving a security alarm) the courtroom had to be cleared again.

9. No court personnel ordered observers to leave the courthouse.

10. The Court did not order the bailiffs or anyone else to tell spectators to leave the courtroom.

11. The Court did not order the bailiffs or anyone else to tell spectators to leave the courthouse.

12. The bailiffs did not tell spectators that they should leave the courthouse.

13. The bailiffs did not tell spectators that they would not be allowed to watch the proceedings.

14. If observers had entered after the jury panel was seated, they would have been allowed back in the courtroom by the Court during the proceedings in this case.

15. Prior to voir dire in this case, the Court's bailiffs cleared the courtroom in order to make room to bring the venire panel into the courtroom and to get them organized and seated, but they did not tell any spectators that they were not allowed to watch the voir dire or any other part of the proceedings in this case.

16. During other trials in the past, including during voir dire proceedings, the 379th Court has had spectators in the courtroom.

(emphasis in original). Thus, the trial court found that, based on the record and its own recollection, the courtroom had been cleared for short periods of time to allow the venire panel to be seated, during a medical emergency, and during a fire alarm. At oral argument, defense counsel conceded that the trial court could properly clear the courtroom for short periods of time under such circumstances. The trial court found that while the bailiffs did clear the courtroom to allow the venire panel to be seated, they did not tell spectators that they were excluded from watching the proceedings. The trial court also found that defense counsel "seemed more intent on objecting to a ruling that was not made (members of the public were not excluded from watching voir dire proceedings)," and "did not seem serious about bringing members of the defendant's family or her friends back into the courtroom to observe." The record supports the trial court's findings.

In support of the conclusion that the trial court's findings are not supported by the record, the majority opinion points to thirteen affidavits that were attached to Cameron's motion for new trial. Eleven of these affidavits are almost identical and state in pertinent part:

Around 10:30 a.m., the jury trial was set to begin. I walked into the courtroom along with other friends and relatives, and noticed that the gallery in the courtroom was about a quarter full.... Before we could sit down completely, the courtroom bailiff, one of the deputies assigned to the 379th District Court, approach[ed] our group that just entered and said in a loud authoritative voice that we all needed to clear the courtroom. The bailiff ejected our entire group and the general public and the entire gallery was cleared. The bailiff told us that a jury panel was going to come up and that they needed the gallery space for the panel and that unless you were a panel member, you could not be in the courtroom. I watched the bailiff usher everyone out of the courtroom, even though we came downtown just to see jury selection. We were not allowed in the courtroom during this time and no member of the public, other than panel members, entered the courtroom, it seemed. This was upsetting to me to be ejected in this manner and excluded from the courtroom. I thereafter left the courthouse *since it was apparent that we were not going to be let into the courtroom.* I never did see jury selection in the case and do not know what happened in that courtroom after the bailiff excluded me.

(emphasis added). Another affidavit by Cameron's mother, who is a sergeant in the San Antonio Police Department, is identical to the statements above, but also adds the following:

I later asked the bailiff that morning [whether] I could enter the courtroom and just sit on the floor and was told that there was no room and that I was not permitted in the courtroom. I thereafter left the courthouse, as did the other relatives and friends, since it was apparent that we were not going to be let into the courtroom. I later learned that the court was willing to allow me personally to enter the courtroom and watch the remainder of voir dire in the afternoon, but I had already left the courthouse by that point and there was not going to be any allowance for the rest of our family or Vanessa's friends or the general public. I never did see jury selection in my daughter's case and do not know what happened in that courtroom after the bailiff excluded me.

Paul J. Goeke, a criminal defense attorney not associated with Cameron's case, affirmed that he saw the bailiff, Joe Gaska, approach a group of people who had just entered the courtroom and "in a loud, authoritative voice" order the entire gallery cleared. Goeke affirms that the "bailiff told the gallery that a jury panel was going to come up and that they needed the gallery space for the panel and that unless you were a panel member, you could not be in the courtroom." A final affidavit by Tonya Kersey affirms, "Around 4 p.m., I arrived and I was told that I could not come into the courtroom and so I waited outside until the jury selection was over. I tried to go into the courtroom when the jury was being picked, but they wouldn't let me."

The State filed a response to Cameron's motion for new trial and attached its own affidavits. Joe Gaska, one of the bailiffs, affirmed in pertinent part:

Jury selection began in Vanessa Cameron's case on February 21, 2012. In addition to our regular docket that morning, there were at least fifteen or twenty other people in the courtroom. When it came time to bring in the jury panel, I announced to all people in the court that we had to bring a jury panel of sixty-five people into the courtroom. I never said that no one could come back into the courtroom. I never told anyone to leave the courthouse.

I read Paul Goeke's affidavit wherein he states that I said "unless you were a panel member, you could not be in the courtroom." This is contrary to what I said. Goeke's statement insinuates I was telling people in the courtroom they had to leave unless they were on the jury panel. I would never make such [a] statement because as bailiffs, we actually escort the jury panel into the courtroom. There would be no opportunity for jury panel members to be in the courtroom at the time I am preparing for them to come in by placing jury numbers in the seats and so forth. Thus I would not address jury panel members that were not even in the courtroom.

Standard procedure in the 379th District Court is to clear the courtroom to let jurors be seated. Then for many trials we have placed chairs along walls to make seating available for the public and the defendant's family and friends. This particular defendant, Vanessa Cameron, had so many spectators that I recall the Court told her attorney he could open the doors and let the jurors stand in the hall to observe. I believe he was referring to the foyer. The foyer is basically a little hall/room about 8 feet by 8 feet right outside the back of the courtroom. This foyer connects the main hallway of the courthouse to our courtroom.

Although I do not remember when the conversation took place, I do remember being approached by Sylvia Cameron, the mother of the defendant. This possi-

bly could have been when we were on a break from the voir dire due to an event where EMS was present. The courtroom was very crowded with veniremen, and one of the venire members experienced an episode requiring medical attention. When Sylvia Cameron asked if she could sit on the floor, I took it as a sarcastic remark from her, not as a serious request, and I was probably dismissive when I responded to her. My response to her was probably in the negative due to the attitude she displayed to me when she made the request.

Sylvia Cameron is a Sergeant with the San Antonio Police Department and her daughter was on trial for murder. I suspected that she would know that, in such a situation, it is a security risk to have individuals sitting on the floor where they might be out of sight of bailiffs. As a peace officer she is able to carry weapons in the courthouse. I certainly could not have her sitting out of sight, on the floor, potentially carrying a weapon which her daughter (defendant Vanessa Cameron—on trial for murder) probably knew about and could potentially reach during voir dire or any other time during the trial.

(emphasis in original). Also attached was an affidavit by Richard Villarreal, a bailiff, who affirmed that to his knowledge, "no one was excluded from the courtroom with the intention of not being allowed to watch the trial, including voir dire."

Unlike the majority, I cannot conclude based on these affidavits that the record affirmatively shows no member of the public was allowed back into the courtroom such that no deference should be given to the trial court's findings. As noted in my previous opinion, I believe that the record is silent on many factual considerations. *See Cameron*, 415 S.W.3d at 420 (Angelini, J., dissenting). However, because it is

Cameron's burden to show the courtroom was closed to the public, this silence in the record weighs against Cameron and in favor of deferring to the trial court's findings. Therefore, I would hold that Cameron did not meet her burden of showing that the courtroom was closed to the public.

Further, because I believe the trial court correctly denied Cameron's motion to suppress and did not abuse its discretion in admitting rebuttal evidence of an alleged prior solicitation, I would affirm the judgment of the trial court.