

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00794-CR

Ol **WALLACE** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR3487
Honorable Velia J. Meza, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Liza A. Rodriguez, Justice
                 Lori Massey Brissette, Justice

Delivered and Filed: December 23, 2024

AFFIRMED

Appellant Ol Wallace Jr. was charged with six counts including murder, aggravated assault with a deadly weapon, and deadly conduct. A jury found him guilty on one count of murder, assessing punishment of confinement for forty-five years. He now asks this court to reverse the trial court's judgment, asserting that his Sixth Amendment right to a public trial was violated. We conclude the closure did not constitute a violation of his Sixth Amendment rights and, accordingly, affirm the trial court's judgment.

## BACKGROUND

Wallace was charged by indictment with six counts including murder, aggravated assault with a deadly weapon, and deadly conduct relating to an incident which occurred on January 17, 2022. The trial began with voir dire on July 14, 2023, and the presentation of evidence commenced on July 31, 2023. The jury began deliberating on August 4, 2023.

On August 7, 2023, the trial court notified counsel that it would be conducting an in-camera hearing to excuse a juror who notified the trial court over the weekend that she had contracted COVID. The trial court closed the courtroom for the hearing and stated, "I am conducting an in-camera hearing, and this is the best way to handle it. So this is not a public hearing because what we're going to discuss is not public information, and I don't want it disseminated."

During the in-camera hearing when the courtroom was closed, defense counsel objected to the closure:

| | |
|---|---|
| MR. YOUNG: | I must object. It should be an open court. I would ask that my client's— |
| THE COURT: | On what basis? |
| MR. YOUNG: | —family and the rest be allowed to come in. |
| THE COURT: | On what basis do you want me to fully disclose that a juror has contracted COVID? That is her health-protected information, and she has not given me authority to tell the whole world. So on what basis are you objecting to this in-camera hearing about this one issue? |
| MR. YOUNG: | On the fact that it's not an open court because you've closed the court, Your Honor. |
| THE COURT: | I have closed it for the purposes of this hearing. I am about to bring the jurors in to tell them what we're going to do. That part is also not going to be open, so you—your objection is noted for the record. I'm going to keep going forward. |

During the short in-camera hearing, the trial court accepted, under seal, evidence of the juror's COVID test results and brought the alternate juror in to confirm he had been present through

the entire testimony, the reading of the charge, and the instructions given to the jury. The trial court then brought the entire jury into the closed courtroom and told them a juror had contracted COVID and the alternate juror would participate in deliberations. The trial court told the jurors that they would be given a larger conference room, encouraged them to socially distance and wear masks, and gave them a copy of the Centers for Disease Control guidelines. The trial court went on to provide instructions and reminders to the jury about smoke breaks, bathroom breaks, and how to communicate to the court or to the bailiff. The courtroom was then reopened.

## STANDARD OF REVIEW

Whether a defendant's right to a public trial has been violated is a mixed question of law and fact, but not one that turns on any issue of credibility or demeanor. *Cameron v. State*, 490 S.W.3d 57, 70 (Tex. Crim. App. 2016) (op. on reh'g). We review de novo whether there was a closure impacting the defendant's Sixth Amendment rights and, if so, whether the defendant's constitutional rights were violated. *Williams v. State*, 664 S.W.3d 266, 273 (Tex. Crim. App. 2022); *Cameron*, 490 S.W.3d at 70. If a defendant's right to a public trial was violated, reversal is mandated even without a showing of harm. *See Johnson v. United States*, 520 U.S. 461, 468–69 (1997); *Steadman v. State*, 360 S.W.3d 499, 510–11 (Tex. Crim. App. 2012).

## ANALYSIS

### Defendant's Right to a Public Trial

"The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]'" *Williams*, 664 S.W.3d at 273 (Tex. Crim. App. 2022) (alterations in original) (quoting U.S. CONST. amend. VI). That right is made applicable to the states by the Fourteenth Amendment. *Id.* (citing *In re Oliver*, 333 U.S. 257, 273 (1948)); *see also* U.S. CONST. amend. XIV, § 1. "A public trial is a trial which

is open to the general public at all times." *Williams*, 664 S.W.3d at 273 (quoting *People v. Woodward*, 841 P.2d 954, 956 (Cal. 1992)). While the right to a public trial serves the accused, it also ensures "that the public may see [the defendant] is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* (quoting *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)).

However, not every closure violates or even implicates a defendant's Sixth Amendment right. *Id.* The right to a public trial is not absolute and "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45

First, we must determine whether the courtroom was closed to the public in a manner that encroached upon the defendant's Sixth Amendment rights or whether it was so *de minimis* or trivial so as not to do so. *Williams,* 664 S.W.3d at 276 (citing *Peterson v. Williams*, 85 F.3d 39, 40 (2d Cir. 1996)). In the event the closure is one that impacts the Sixth Amendment right to a public trial, then we must determine whether it was justified under the four factors set out in *Waller*:

> (1) the party seeking to close the [trial] must advance an overriding interest that is likely to be prejudiced,
> (2) the closure must be no broader than necessary to protect that interest,
> (3) the trial court must consider reasonable alternatives to closing the proceeding, and
> (4) it must make findings adequate to support the closure.

*Williams*, 664 S.W.3d at 274 (alteration in original) (quoting *Waller*, 467 U.S. at 48); *accord Cameron*, 490 S.W.3d at 61.

But whether we are reviewing the totality of the circumstances to determine whether the closure was *de minimis* or trivial or reviewing the closure under the *Waller* factors, we must heed the Court of Criminal Appeals' repeated emphasis that the circumstances in which it is appropriate

to close a courtroom are rare. *See, e.g.*, *Cameron*, 490 S.W.3d at 61; *Williams*, 664 S.W.3d at 283. Only the narrowest of circumstances should support a holding that a closure did not violate a defendant's constitutional rights. *Id.*

### *De Minimis* or Trivial

Where it is alleged that the closure is trivial, the review should be focused on whether the closure deprived the defendant of the protections conferred by the Sixth Amendment. *Williams*, 664 S.W.3d at 277 (alteration in original) (quoting *Peterson*, 85 F.3d at 40). More specifically, we should look at whether the totality of the circumstances "implicated the 'values furthered by the public trial guarantee;' namely, '1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury.'" *Id.* (quoting *Peterson*, 85 F.3d at 43) (citing *Waller*, 467 U.S. at 46–47). A closure so trivial that it does not impact those guarantees should not be used to set aside the verdict of a jury.

"We must . . . avoid enforcing the public trial right in a manner so rigid and mechanistic that we do more harm than good to the values underlying that right." *People v. Lujan*, 461 P.3d 494, 499 (Colo. 2020) (quoting *State v. Schierman*, 192 Wash.2d 577, 438 P.3d 1063, 1081 (2018)).[1] "[A] rule requiring automatic reversal for every erroneous closure, no matter how inconsequential to the ultimate fairness of the trial, is more likely to diminish than promote public confidence in the judiciary." *Id.*

Factors to consider include the duration of the closure, what occurred during the closure, whether the proceedings were memorialized on the record or in open court, whether the closure

---

[1] The Texas Court of Criminal Appeals recognized the many states and federal circuits that have adopted the triviality standard and specifically cited to the Colorado Supreme Court's decision in *People v. Lujan*, 461 P.3d 494, 499 (Colo. 2020). *Williams*, 664 S.W.3d at 277 and n.11.

was intentional and whether it was partial or total in nature. *Williams*, 664 S.W.3d at 277 (citing *Lujan*, 461 P.3d at 498–99). "Applying these considerations, courts have frequently held that inadvertent or brief closures, or the exclusion of a single spectator, are too trivial to implicate the Sixth Amendment. On the other hand, courts have held that closures are not trivial where they are less fleeting, are longer in duration, or exclude individuals during a key witness' testimony." *Id*.

In *Williams*, the decision first adopting the triviality standard in Texas, the closure – found to be trivial - was a partial one. *Id.* at 273-74. One family member was excluded during the testimony of one witness but was allowed to view a live video feed of the proceedings from a neighboring courtroom. *Id*. In *Peterson*, the court focused on the fact that the closure was inadvertent even though it occurred during the defendant's own testimony. *Peterson*, 85 F.3d at 41. But, no one factor is dispositive and "no bright-lines apply." *Williams*, 664 S.W.3d at 274. Instead, as set forth above, the totality of the circumstances must be viewed in light of the "values furthered by the public trial guarantee." *Peterson*, 85 F.3d at 43; *Williams*, 664 S.W.3d at 277.

Here, the closure was complete and not partial, in that the trial court conducted the in-camera hearing, excluding everyone but the parties and counsel so as not to disclose to the public the private health information of the discharged juror or the exposure risk suffered by the remaining jurors. It occurred after the presentation of evidence had concluded, closing arguments had been made, and the jury had begun deliberations. In terms of length, the closure lasted a very short time – a matter of minutes – just long enough to talk to the alternate juror and notify the remaining jurors of the substitution as well as the steps to be taken to protect them from continued exposure to COVID. Finally, everything that occurred during the closure was transcribed by a court reporter.

With these facts, it is hard to see how this closure could have meaningfully infringed upon the defendant's Sixth Amendment rights. In terms of ensuring a fair trial, the taking of evidence had concluded. There was no objection to the discharge of the juror who contracted COVID or the substitution of the alternate for deliberations. And, the alternate juror, ultimately substituted in for deliberations, was originally empaneled in a public courtroom after a public voir dire proceeding.

Further, given that this closure occurred after the closing of evidence, it cannot implicate the Sixth Amendment protections which encourage witnesses to come forward and discourage perjury. *See United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003) (closure was trivial, in part, because it occurred after the presentation of evidence and, therefore, did not "infect any witnesses's testimony"); *see also State v. Northcutt*, 318 Mont. 81, 358 P.3d 179, 185 (2015) (concluding closure did not impact guarantees relating to witnesses and perjury when it occurred after close of evidence).

Finally, with regard to the last factor to consider, that the Sixth Amendment serves to "remind the prosecutor and judge of their responsibility to the accused and the importance of their functions," the trial court at all times remained on the record, even during the in-camera hearing. Having a bailiff and court reporter present, "while not a substitute for real-time public observation, certainly served to remind the court. . . of [it's] responsibilities and provide a check on possible bias." *Lujan*, 461 P.3d at 496 (quoting *Schierman*, 438 P.3d at1082).

Various courts have reviewed closures that involved the questioning of jurors and found them to be trivial and not of constitutional concern. In *Ivester*, the court excluded spectators while it briefly questioned one juror and then the entire jury about their safety concerns. *Ivester,* 316 F.3d at 960. The closure was held to be trivial. *Id.* As well, the Colorado Supreme Court held trivial a closure where a trial court chose to reread a limiting instruction to the jury mid-deliberations

outside the presence of everyone, including even the parties and their counsel. *Lujan*, 461 P.3d at 495-96. In fact, the United States Supreme Court has been clear that there is no constitutional concern with a judge speaking to a juror outside the presence of spectators or even outside the presence of the parties and their counsel. "The mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam) (*quoting Rushen v. Spain*, 464 U.S. 114, 125-26, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (Stevens, J., concurring in judgment). "Because a trial judge may question a juror alone in chambers, without the public present, a fortiori the judge may do so with the parties and counsel present." Ivester, 316 F.3d at 959.

Based on the totality of the circumstances, we hold that the closure in this case was not of such significance that it meaningfully infringed upon the values protected by the Sixth Amendment right to a public trial. The closure was over in a matter of minutes, occurred after the close of evidence and during jury deliberations, involved actions which could have been done in chambers or at a bench conference, and was transcribed by a court reporter. In those circumstances, we hold it was a *de minimis* or trivial closure.

## CONCLUSION

Because the closure did not encroach upon the defendant's Sixth Amendment rights, we need not consider application of the *Waller* factors to determine if the closure was justified. Accordingly, we affirm the trial court's judgment.

Lori Massey Brissette, Justice

DO NOT PUBLISH