# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00286-CR

---

**Robert Wayne Corporon, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 424TH DISTRICT COURT OF LLANO COUNTY
### NO. CR7543, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

---

## O P I N I O N

A jury convicted appellant Robert Wayne Corporon of two counts of indecency with a child by sexual contact and assessed punishment at twelve years' imprisonment for count one and fifteen years' imprisonment for count two. *See* Tex. Penal Code § 21.11(a)(1). The district court rendered judgment on the verdicts and ordered the sentences to run consecutively. In five issues on appeal, Corporon asserts that: (1) the district court abused its discretion when it failed to hold a hearing on Corporon's motion for new trial; (2) his right to a public trial was violated when members of his family were "excluded" from the courtroom during jury selection; (3) the district court erred when it failed to conduct a hearing on the admissibility of extraneous-offense evidence; (4) the evidence is insufficient to support his convictions; and (5) the district court abused its discretion in failing to grant a mistrial when the State elicited testimony relating to the prosecutor's opinion of the case. We will affirm the district court's judgments.

## BACKGROUND

Corporon is the step-grandfather of C16-788, the victim in the case.[1]  At the time of the alleged offenses, C16-788 lived in Colorado with her parents and siblings, and Corporon, the husband of the children's maternal grandmother, lived in Llano County, Texas.  The jury heard evidence that in the summer of 2016, when C16-788's family was vacationing in Texas at Corporon's lakehouse, Corporon touched C16-788's sexual organ and her anus.

C16-788, who was eight years old at the time of the offenses and ten years old at the time of trial, testified that on July 4, 2016, during a fireworks display, Corporon picked her up, with one arm holding her legs and the other arm behind her back.  C16-788 recounted that Corporon, using the arm that was behind her back, moved his hand underneath her pants and underwear, touching her "cheeks" and "back end."  C16-788 added that Corporon's hand went inside her "crack" and pushed up against her "hole," which she identified as the part of her body that is used for "going number two."  According to C16-788, the incident was observed by Corporon's father, who was staring at Corporon when his hand was in C16-788's pants, which made her uncomfortable.  Corporon stopped touching C16-788 when she pulled his hand out of her pants and "got down to go see what [her] dad was doing."

C16-788 further testified that on a later date during the same vacation, Corporon touched her in her "front area" while helping her put on a life jacket to go swimming.  C16-788 explained that Corporon put his hand inside her swimsuit, "cupped" the area between her legs, and "pinched the pink thing" "in the middle" of "the front part" of her body, which she identified

---

[1] C16-788 is a pseudonym assigned to the child by the investigators in the case.  The pseudonym was used in the trial transcript and the appellate briefs to protect the child's identity and we will do the same in this opinion.  *See* Tex. R. App. P. 9.10.

2

as the part of her body that is used for "going number one." C16-788 testified that while Corporon was putting on her life jacket and touching her there, he asked her, "How does that feel?" C16-788 pulled his hand out of her swimsuit and ran off to go swimming.

Later that day, as C16-788 was watching a movie with Corporon and other family members, Corporon asked her to sit on his lap. C16-788 testified that when she did so, Corporon placed his hand underneath her clothes and touched her "cheek." C16-788 pulled his hand out, told him, "Don't do that," and sat on the floor. C16-788 also testified that at some point before the movie began, Corporon had touched her chest.

C16-788's mother testified that while they were staying at the lakehouse, C16-788 told her that Corporon was "constantly putting his hands down her pants and touching her." C16-788's mother told her husband, and they agreed to return to Colorado the following day. Upon their return, C16-788's parents contacted law enforcement in both Colorado and Texas and an investigation began. C16-788 was first interviewed in Colorado. The information obtained during the interview was relayed to investigators in Texas, who determined that the touching described by C16-788 during her interview in Colorado did not meet the elements of the Texas indecency statute and closed the case.

The case was later reopened when C16-788's mother contacted the Llano County Sheriff's Office with additional information. The mother informed investigators that she had additional conversations with C16-788, and that during these conversations, the child had provided a more detailed account of the incidents. C16-788 was then interviewed in Texas.

Based on the information obtained during the Texas interview and other evidence, which we discuss in more detail below, Corporon was charged in a four-count indictment with the offense of indecency with a child by contact. At trial, the State abandoned Count IV of the

indictment. The jury found Corporon guilty of Count I, which alleged that Corporon had touched C16-788's anus, and Count II, which alleged that Corporon had touched C16-788's sexual organ. The jury found Corporon not guilty of Count III, which alleged that Corporon had touched C16-788's breast. This appeal followed.

## ANALYSIS

**Motion for new trial / right to public trial**

Following his convictions, Corporon filed an amended motion for new trial in which he asserted that he had been denied his right to a public trial. Specifically, Corporon contended that three of his family members had been "excluded" from the courtroom during jury selection when an assistant to defense counsel advised the family members that they could not be present in the courtroom at that time.[2] The motion for new trial was overruled by operation of law. In his first issue, Corporon asserts that the district court abused its discretion in failing to hold a hearing on the motion for new trial. In his second issue, Corporon claims that he should be granted a new trial because he was denied his right to a public trial. Because these issues are related, we address them together.

We review a trial court's ruling on a motion for new trial, as well as its decision on whether to hold a hearing on the motion, for an abuse of discretion. *See Briggs v. State*, 560 S.W.3d 176, 183–84 (Tex. Crim. App. 2018); *Freeman v. State*, 340 S.W.3d 717, 732 (Tex. Crim. App. 2011). "'In so doing, we reverse only when the trial judge's decision was so

---

[2] The identity of the assistant is unclear from the record. The motion for new trial referred to the individual as both "defense counsel's co-counsel" and "the legal assistant." Two of the family members, in their affidavits attached to the motion for new trial, identified the individual as "the assistant attorney," while the third family member referred to him as "the assistant to [Corporon's] lawyers."

4

clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010) (quoting *Smith v. State*, 286 S.W.3d 333, 349 (Tex. Crim. App. 2009)).

"The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (citing *Smith*, 286 S.W.3d at 338). "Such a hearing is not an absolute right." *Id*. A trial court abuses its discretion in failing to hold a hearing only "if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Id*. "This second requirement limits and prevents 'fishing expeditions.'" *Id*. Although a defendant "need not plead a prima facie case in his motion for new trial, he must at least allege sufficient facts that show reasonable grounds to demonstrate that he could prevail" on the merits of his claim. *Id*. at 199–200; *see also Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019) ("Bare assertions, without supporting factual allegations, are not sufficient to entitle a party to a hearing, and a trial court is not required to hold a hearing to conduct a 'fishing expedition.'").

In Corporon's motion for new trial, he asserted a violation of his right to a public trial. "The Sixth Amendment of the United States Constitution guarantees an accused the right to a public trial in all criminal prosecutions." *Lilly v. State*, 365 S.W.3d 321, 328 (Tex. Crim. App. 2012) (citing U.S. Const. amend. VI). If a defendant proves that his right to a public trial was violated, he is entitled to a new trial. *See id*. at 333.

To prevail on his claim that he was denied his right to a public trial, Corporon must show that (1) his trial was, in fact, closed to the public and (2) that any such closure was not

5

justified by competing interests. *See id*. at 328–29 (citing *Waller v. Georgia*, 467 U.S. 39, 42, 48 (1984)). "When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded." *Id*. at 331. "Rather, a reviewing court must look to the totality of the evidence and determine whether the trial court fulfilled its obligation 'to take every reasonable measure to accommodate public attendance at criminal trials.'" *Id*. (quoting *Presley v. Georgia*, 558 U.S. 209, 215 (2010)).

Corporon attached three affidavits to his motion for new trial, one from each of the three family members allegedly excluded from the courtroom. The affidavits indicate that defense counsel or an assistant to defense counsel instructed the family members to leave the courtroom during jury selection, effectively resulting in their "exclusion" from the courtroom at that time. The inquiry is not whether individuals were excluded but whether the district court "fulfilled its obligation to take every reasonable measure to accommodate public attendance" at Corporon's trial. *See id*. Nothing in the affidavits suggests that the district court failed to fulfill that obligation in this case or was in any way responsible for the removal of Corporon's family members from the courtroom.[3] *Cf. Presley*, 558 U.S. at 210 (concluding that defendant was

---

[3] Corporon asserts that defense counsel's actions should be imputed to the district court because defense counsel is an "officer of the court." As support for this contention, Corporon cites to *Owens v. United States*, a case in which "uniformed officers," specifically a United States Marshal and his deputies, prevented spectators from entering the courtroom during jury selection to ensure that there would be enough seats in the courtroom for the jury pool. 483 F.3d 48, 54, 61 (1st Cir. 2007). The circuit court concluded "that if the trial court barred spectators from the courtroom as Owens alleges, he was denied his Sixth Amendment right to have a public trial." *Id*. at 63. However, in *Owens* and similar cases, the closure was effectuated by courtroom security officers, not defense counsel. *See also United States v. Deluca*, 137 F.3d 24, 30, 32–34 (1st Cir. 1998) (United States Marshal implemented security procedures that amounted to "partial closure" of courtroom); *Martineau v. Perrin*, 601 F.2d 1196, 1197–99 (1st Cir. 1979) (court bailiff mistakenly locked courtroom doors). We have found no authority for the

denied right to public trial when trial court instructed defendant's family member to leave courtroom during voir dire); *Cameron v. State*, 490 S.W.3d 57, 58–59, 62 (Tex. Crim. App. 2014) (concluding that defendant was denied right to public trial when trial court prevented spectators from entering courtroom because of security concerns and inadequate seating space in courtroom). Therefore, Corporon's motion and accompanying affidavits fail to "establish reasonable grounds showing that the defendant could potentially be entitled to relief," and a hearing on his motion would amount to nothing more than a "fishing expedition." *See Hobbs*, 298 S.W.3d at 199–200. Accordingly, on this record, we cannot conclude that the district court abused its discretion in overruling Corporon's motion for new trial without conducting an evidentiary hearing. We similarly cannot conclude that Corporon was denied his right to a public trial.

We overrule Corporon's first and second issues.

**Article 38.37 hearing**

During trial, the district court admitted extraneous-offense evidence concerning other acts that Corporon allegedly committed against C16-788 and her sister C16-789, under the authority of Article 38.37 of the Code of Criminal Procedure. *See* Tex. Code of Crim. Proc. art. 38.37, §§ 1(b), 2(b). However, contrary to the requirements of Article 38.37, the district court did not conduct a hearing outside the presence of the jury to determine if the evidence was admissible. *See id*. § 2-a ("Before evidence described by Section 2 may be introduced, the trial

---

proposition that actions taken by defense counsel to remove individuals from the courtroom, absent any involvement by the trial court or courtroom personnel, amount to a denial of the defendant's right to a public trial. On the other hand, there are federal cases holding that when defense counsel is responsible for the exclusion of individuals from the courtroom or consents to their exclusion, the defendant forfeits any complaint on appeal that his trial was closed. *See, e.g.*, *Addai v. Schmalenberger*, 776 F.3d 528, 532–34 (8th Cir. 2015); *United States v. Gomez*, 705 F.3d 68, 75–76 (2nd Cir. 2013).

judge must determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt and conduct a hearing out of the presence of the jury for that purpose.").[4]  In his third issue on appeal, Corporon asserts that the failure to conduct an Article 38.37 hearing violated his due-process rights.

The State argues in response that Corporon failed to preserve this issue for review.  We agree.  As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion and that the trial court ruled on the request, objection, or motion, either expressly or implicitly.  Tex. R. App. P. 33.1(a).  "A party satisfies the requirement of a timely trial-level complaint 'if the party makes the complaint as soon as the grounds for it become apparent[.]'" *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016) (quoting *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)).  "This means 'as soon as the [objecting party] knows or should know that an error has occurred.'"  *Id*. (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)).  "The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the

---

[4] We note that the requirement of a hearing applies only to evidence relating to extraneous offenses committed against the victim's sister, not to extraneous offenses committed against the victim. *See Garcia v. State*, No. 13-17-00218-CR, 2019 Tex. App. LEXIS 2397, at *26–27 (Tex. App.—Corpus Christi Mar. 28, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that section 1(b) of article 38.37, relating to extraneous offenses committed against victim of charged offense, is not subject to hearing requirement).

8

orderly and effective presentation of the case to the trier of fact." *Gillenwaters*, 205 S.W.3d at 537.

Here, the record reflects that Corporon did not object at any point to the failure of the district court to conduct the requisite Article 38.37 hearing. In fact, before the State began questioning C16-789 on the alleged extraneous offenses, the record reflects that the following occurred:

[Prosecutor]:      Actually, can we approach, Your Honor?

[The court]:       You may.

                   (At bench)

[Prosecutor]:      At this time I'm going to be going into some extraneous conduct with this witness, so I just realized I need to approach first and entertain any—

[Defense counsel]: What are we—where are we going?  Just what happened?

[Prosecutor]:      What happened with C16-789, the stuff in my [extraneous-offense] notice, the ice cubes.  And then eventually I'm going to ask her about things in other houses that made her uncomfortable as well.

[Defense counsel]: Sure.

[Prosecutor]:      Okay.  Just making sure.

[Defense counsel]: No problem.

[The court]:       Okay.

9

Thus, not only did Corporon fail to object to the lack of hearing, he stated that he had "no problem" with the admission of the extraneous-offense evidence.

However, Corporon asserts in his brief that the failure to hold an Article 38.37 hearing is not subject to the rules of error preservation. We disagree. The requirement of error preservation "generally applies to all complaints except those that involve rules that are 'waivable only' or 'systematic' (or 'absolute') requirements." *London*, 490 S.W.3d at 507 (citing *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004)). Rights that are waivable-only include the right to the assistance of counsel and the right to a jury trial. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002). Absolute "systemic" requirements include jurisdictional requirements and the constitutional prohibition against ex post facto laws. *See id*. at 888–89. "[A]ll other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez*, 138 S.W.3d at 342.

The Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano*, 70 S.W.3d at 889. Complaints regarding article 38.37 concern the admissibility of evidence. Accordingly, multiple intermediate appellate courts, including this Court, have held that a defendant, by not objecting during trial, forfeits his complaint that the trial court failed to conduct an Article 38.37 hearing. *See, e.g.*, *Carmichael v. State*, 505 S.W.3d 95, 103 (Tex. App.—San Antonio 2016, pet. ref'd); *Baker v. State*, No. 03-18-00240-CR, 2019 Tex. App. LEXIS 3062, at *9–10 (Tex. App.—Austin Apr. 17, 2019, no pet.). Following these cases, we conclude that the district court's failure to hold an Article 38.37 hearing has not been preserved for review.

We overrule Corporon's third issue.

10

**Evidentiary sufficiency**

A person commits the offense of indecency with a child by sexual contact if the person engages in sexual contact with a child younger than 17 years of age. Tex. Penal Code § 21.11(a)(1). "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person. *Id*. § 21.11(c)(1). In his fourth issue, Corporon asserts that the evidence is insufficient to support his convictions for this offense.

When examining the sufficiency of the evidence to support a finding of guilt, "[t]he standard of review is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard gives 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. (quoting *Jackson*, 443 U.S. at 318–19; *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014)). "In considering whether the inferences drawn by the trier of fact are reasonable, an appellate court must consider the 'combined and cumulative force of all the evidence.'" *Id*. (quoting *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Id*. (citing *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016)). "A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. (citing *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016)).

Corporon argues that the evidence is insufficient for several reasons. First, he places significance on the evidence that was admitted pertaining to the Colorado interview, in which C16-788 "gave no information that met the elements of any offense in the state of Texas." However, the jury could have discounted this evidence and instead credited C16-788's later interview in Texas, in which she provided information that the jury could have concluded satisfied the statutory elements of the charged offenses. Grace Yeager, the forensic services manager for the Children's Advocacy Center in Burnet, Texas, conducted the interview. Yeager testified that C16-788 had disclosed to her during the interview that Corporon had touched her genitals. According to Yeager,

> She told me that it happened at Rob's house while they were putting life—their life jackets on. She described wearing a swimsuit and how he put his hand into that swimsuit, used his hand. He cupped his hand and he—she demonstrated multiple times this cupping that he did his fingertips to—it started at the area between the anus and the opening of the vagina and he moved his hand up to the top of her vagina where she described a "pink thingy," which I would consider the clitoris is what she showed on the doll. She asked to use the doll. And she described that pretty thoroughly.

Yeager added, "She did tell me specifically the places that his—that she felt his hand and she told me that when he got to the pink thing—the pink thingy at the top of her vagina he used his two fingers and he squeezed it and it hurt her."

Yeager provided similar testimony regarding the anal contact. She testified that C16-788 "talked about the hole on the back of her body in between the cheekies, the place where number two comes out, and I understood that to be her anus because number two comes out of there and she uses it for the bathroom, and she actually showed [that] on the doll." Yeager also testified, "I had to verbalize it for her because she held up a side of her hand and said that he

12

would try to put—'to put,' 'to push'—there was a couple of different adjectives that she used, but to put this area of her hand in her hole and she told me that she couldn't see his hand because it was behind her body, but that she could feel it pushing just like someone pushes on your body, yes." The jury, as factfinder, was free to credit Yeager's testimony regarding the specific information obtained during the Texas interview and to discount the lack of information obtained during the Colorado interview. *See Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) ("When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination.").

Corporon also disputes C16-788's testimony describing how Corporon touched her anus while he held her in his arms. Corporon asserts that it would have been "physically impossible" for him, "with his arms spread apart on two separate parts of her body," i.e., with one arm on her legs and the other arm on her back, "to then place his hands down her shorts, underwear, and to reach her anus." Again, however, it was for the jury to decide whether it was possible for Corporon to touch C16-788 in the manner she described, and we are to defer to that finding. "Courts give wide latitude to testimony provided by child victims of sexual abuse." *Jones v. State*, 428 S.W.3d 163, 170 (Tex. App.—Houston [1st Dist.] 2014, no pet.). "We liberally construe this testimony, and, as long as the child communicates to the jury that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient." *Id*. "The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). Here, C16-788 testified that Corporon's hand went inside her "crack" and pushed up against her "hole," which she identified as the part of her body that is used for "going number two." Also admitted into

13

evidence was an anatomical diagram of a girl's body, which was marked by C16-788 in a manner consistent with her testimony that Corporon had touched that area of her body. This evidence is sufficient to prove that Corporon touched C16-788's anus as alleged in Count I of the indictment. *See Jones*, 428 S.W.3d at 169–70; *see also Alba v. State*, No. 03-16-00680-CR, 2018 Tex. App. LEXIS 1261, at *7-9 (Tex. App.—Austin Feb. 15, 2018, no pet.) (mem. op., not designated for publication) (collecting cases concluding that child victim's testimony alone was sufficient to support conviction for sexual offense and explaining rationale for rule).

Finally, Corporon asserts that there was no evidence presented that Corporon acted with the intent to arouse or gratify the sexual desire of any person. However, it is well established that "the requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *Gonzalez Soto*, 267 S.W.3d at 332; *Navarro v. State*, 241 S.W.3d 77, 79 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Here, the jury could have inferred Corporon's sexual intent in touching C16-788's anus from the manner in which he picked her up and placed his hand underneath her pants and underwear, and the jury could have inferred his sexual intent in touching her genitals from the manner in which he placed his hand underneath her swimsuit, "cupped" her genital area, and "pinched" her sexual organ, asking her, "How does that feel?" We conclude that this and other evidence is sufficient to prove that Corporon touched C16-788's anus and genitals with the requisite sexual intent.

We overrule Corporon's fourth issue.

**Motion for mistrial**

As discussed above, the case was investigated in both Colorado and Texas. Deputy Mary Chitwood of the Llano County Sheriff's Department testified that after speaking

with a detective in Colorado who had interviewed C16-788, she decided to close the case "because it just did not meet the elements" of the Texas indecency statute. During cross-examination, defense counsel questioned Chitwood as to the prosecutor's involvement in communicating that decision to C16-788's mother:

Q.      So that's what you told [C16-788's mother], we have found there's not enough to go on?  Yes?

A.      That's correct.

Q.      Then you referred her to other persons if she wanted to continue?

A.      I referred her to the district attorney's office.

Q.      And what does that mean that you referred her?  What would you do that for?

A.      I don't remember exactly all of why I referred it to Stacy Burke, the assistant district attorney, but I believe it was because she was not understanding why the case would be closed when I explained to her that it didn't meet the elements, so I referred her to the district attorney so the district attorney could go over it with her.

Q.      Fair to say [the mother] was not pleased with the decision to close the case?

A.      I can't say if she was pleased or not, sir.

Q.      You don't recall?

A.      She was not understanding why.

Q.      In your official police report did you ever state anything such as if

15

additional information develops this case can be reopened?

A. No, sir.

Q. As I understand the sequences here, Deputy Chitwood, you closed the case, you referred [C16-788's mother] to another office, and then the case was reopened; is that fair?

A. To my knowledge. I just found that out a few days ago.

On redirect examination, Stacy Burke, the prosecutor who had been mentioned in the above testimony, sought to clarify her involvement in the decision to close the case:

Q. All right. Now, Deputy Chitwood, regarding referring [C16-788's mother] to me, my office and then ultimately myself, you and I certainly had discussions after you received the anatomical diagrams from Detective Baumhover in Colorado?

A. Yes, ma'am.

Q. And you forwarded those diagrams to me, correct?

A. Yes, ma'am.

Q. And did I agree with you that based on those diagrams it did not meet the elements of indecency with a child by sexual contact?

A. Yes, ma'am.

At that point, defense counsel asked to approach the bench and objected to the prosecutor becoming "a witness in the case." The prosecutor responded that "the only reason [she] went down this path is that [her] name has specifically been brought up" and that she wanted to "clear

16

up any misconception" and "not leave some impression that I disagreed with anyone's decision at that time" to close the case. The district court overruled the objection and Corporon moved for a mistrial, which the district court denied. Burke then continued her questioning of Chitwood as follows:

> Q. So, Deputy Chitwood, you contacted me through my office and we discussed the information that was available at the time and that your decision was going to be to close the case and I agreed with that decision; is that a fair representation?

> A. That's correct.

> Q. All right. And your testimony was that [C16-788's mother] was not understanding why that was happening and you referred her to our office as well?

> A. That's correct.

In his fifth issue, Corporon asserts that the district court abused its discretion in failing to grant a mistrial.

"A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors." *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id*.

"We review a trial court's denial of a mistrial for an abuse of discretion." *Balderas v. State*, 517 S.W.3d 756, 783 (Tex. Crim. App. 2016). "We review the evidence in the

17

light most favorable to the trial court's ruling and consider only those arguments before the court at the time of the ruling." *Turner*, 570 S.W.3d at 268. "The trial court's ruling must be upheld if it was within the zone of reasonable disagreement." *Id*. In determining whether a trial court abused its discretion in failing to grant a mistrial following prosecutorial misconduct, reviewing courts are to consider: (1) the severity of the misconduct; (2) any measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004).

In this case, Corporon's motion for mistrial was based on his contention that the prosecutor had become a witness in the case. "'The concepts of due process and fundamental fairness require a separation between the State's advocates and its witnesses.'" *Id*. at 931 (quoting *Brown v. State*, 921 S.W.2d 227, 231 (Tex. Crim. App. 1996) (Keller, J., concurring)). "'The prosecutor who tries a case should not testify as a witness in regard to a contested matter absent a showing that [her] testimony is necessary.'" *Id*. "'Such necessity generally involves a showing that the testimony is important to the State's case or required to rebut the defendant's case and that the need for the testimony could not reasonably have been anticipated.'" *Id*.

Here, the prosecutor did not testify. Instead, she elicited testimony from Chitwood indicating that she had agreed with Chitwood's decision to close the case. Corporon asserts that this was the functional equivalent of the prosecutor testifying, and a violation of Texas Disciplinary Rule of Professional Conduct 3.08, which prohibits an attorney from serving a dual role as both witness and advocate during trial. *See* Tex. Disciplinary R. Prof. Conduct 3.08(a).

The Court of Criminal Appeals has held that in cases where a disciplinary rule violation is alleged, "it is unnecessary for trial and appellate courts to decide whether the State's

18

conduct violated a disciplinary rule. That is the domain of the State Bar." *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997). Instead, our role is to determine the effect of the alleged rule violation on the fairness of the trial proceedings. *See id.* at 252–53; *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). An alleged disciplinary rule violation by the State does not require a reversal of a conviction unless the defendant can demonstrate "actual prejudice," i.e., that "the alleged disciplinary rule violation affected his substantial rights or deprived him of a fair trial." *Id.* at 252 (citing *Brown*, 921 S.W.2d at 229–30).

When the alleged disciplinary violation is based on Rule 3.08's prohibition against a lawyer serving as both witness and advocate, we look to "the subject matter of the prosecutor's testimony" to determine prejudice. *See Ramon*, 159 S.W.3d at 931. "When a lawyer's testimony relates solely to an uncontested issue or to a mere matter of formality, there is little concern for the possible confusion generated by undertaking the dual role of advocate-witness." *Gonzalez v. State*, 63 S.W.3d 865, 877–78 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 117 S.W.3d 831 (Tex. Crim. App. 2003) (citing Tex. Disciplinary R. Prof'l Conduct 3.08, cmt. 4). "However, when the testimony goes to a controversial or contested matter, combining the roles can unfairly prejudice the opposing party." *Id.*

Here, the challenged exchange was that the prosecutor had agreed with the investigator's decision to close the case. However, the decision to close the case was not "a controversial or contested matter." At no point during trial did the State dispute that the information obtained from the Colorado investigation was insufficient to support a conviction under the Texas indecency statute. Rather, the contested issue at trial was why the case had been

re-opened. The defensive theory at trial was that C16-788's mother had pressured the police to re-open the case. The State argued in response that the case had been re-opened because new evidence had come to light following C16-788's forensic interview in Texas. Because the challenged exchange was limited to the uncontested issue of the decision to close the case and did not relate to the contested issue of the decision to re-open the case, this weighs against a finding that Corporon suffered prejudice from the alleged rule violation. *See Ramon*, 159 S.W.3d at 931.

We next consider any measures adopted to cure the alleged misconduct. This factor refers to the efficacy of any measures taken to ameliorate the harm, if any, from the alleged prosecutorial misconduct, such as self-corrective actions taken by the prosecutor, instructions to disregard by the trial court, or limiting instructions in the jury charge. *See Hawkins v. State*, 135 S.W.3d 72, 84–85 (Tex. Crim. App. 2004). Here, no such measures were adopted.

Finally, we consider "the likelihood that appellant would have been convicted absent the misconduct." *Ramon*, 159 S.W.3d at 931. In addition to the detailed testimony of C16-788, summarized above, the evidence against Corporon included the testimony of Corporon's wife, Benita, who claimed that Corporon had confessed to touching C16-788 underneath the waistband of her pants "while he was rubbing her belly." C16-788's mother testified that Benita called and texted her, informing her that Corporon had "confessed" to touching C16-788. A copy of the text message was admitted into evidence. In the message, Benita wrote the following, "I want you to know Rob has confessed and is very sorry and has asked for my forgiveness and your family's forgiveness." Additionally, Corporon wrote a letter to C16-788's mother and father in which he admitted to touching C16-788 "inappropriately" and

apologized for doing so, although he denied any sexual intent. A copy of this letter was admitted into evidence and read into the record by C16-788's mother. The letter contained numerous details that were consistent with C16-788's description of the touching. At one point in the letter, Corporon wrote, "In retrospect I realize now the degree of my inappropriateness, but I had no intentions of ever molesting these girls." Moreover, Corporon testified in his defense and admitted to "accidentally" and "carelessly" touching C16-788 underneath her pants and her swimsuit with his "fingertips," and he further admitted that the touching was "inappropriate," although he also claimed that the touching was unintentional and that he had no sexual thoughts or feelings toward C16-788. However, as discussed above, there was evidence admitted that Corporon had committed multiple extraneous offenses against C16-788 and her sister C16-789, and this and other evidence supported the jury's finding that Corporon, despite his denials to the contrary, had committed the charged offenses with the requisite sexual intent.

Given the strength of the above and other evidence against Corporon and the limited nature of the allegedly improper testimony, we cannot conclude on this record that the district court's decision not to grant a mistrial was outside the zone of reasonable disagreement. *See Ramon*, 159 S.W.3d at 932. Again, that remedy is reserved for "extreme circumstances." *See Turner*, 570 S.W.3d at 268. Such circumstances are not present here.

We overrule Corporon's fifth issue.

21

## CONCLUSION

We affirm the district court's judgments of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   October 2, 2019

Publish